STATE of Missouri, Respondent,

v.

Roy WATSON and Don Eggar, Appellants.

No. 49402.

Supreme Court of Missouri,

Division No. 1.

Feb. 11, 1963.

**520**

Clyde Rogers, Gainesville, for appellants.

Thomas F. Eagleton, Atty. Gen., Robert D. Kingsland, Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner

Under § 559.210[1] defendants Roy Watson and Don Eggar were charged with and convicted of having feloniously made an assault upon one Eldon Welch by striking him with their fists, whereby he received great bodily harm. The jury assessed the punishment of Watson at three years in the penitentiary, and that of Eggar at imprisonment in the county jail for three months and a fine of $100. Both defendants have appealed from the judgment and sentence.

Six or eight months prior to the incident in question Watson and Welch had trouble over Welch's claim that Watson's hound-dog had eaten chicken pellets and eggs belonging to Welch. Watson had "made [Welch] out a liar about the dog." Welch had told Watson to keep his dog at home, and threatened to kill Watson's beagles for chasing rabbits in Welch's alfalfa. One witness said Welch included the Watson house dog in his threats.

On August 2, 1961 a small white house dog, which belonged to Watson's daughter, was shot, came home wounded, and died. The next day Watson and his stepson Eggar were at a place on the public road, looking at some cattle belonging to one Nance, which were pastured in a field leased to Nance by Welch. Welch came out of his nearby house and joined Watson and Eggar.

According to the state's witnesses, Watson asked Welch why Welch killed his dog. Welch had not killed the dog, and denied the killing. Watson swore and said he did. When Welch turned around, Eggar grabbed Welch's arm, jerked him down in a ditch, pinned his arm behind him and Watson twice struck Welch on the left jawbone with his right fist, while Eggar was holding Welch's arm behind him. Welch was standing up (in the ditch) when Watson struck him. Welch had not struck Watson up to this time. Then "they" pushed and shoved Welch into "the car" and took him to see one Alvis Thomas to confirm in Welch's presence the fact that Welch had threatened to shoot the little white dog. In the car Welch tried to strike Watson with a pop bottle, which Eggar took away from him and threw away. En route Watson told Welch "they" were going to run him out

---

1. "If any person shall * * * receive great bodily harm * * * by the act * * * of another, in cases and under circumstances which would constitute murder or manslaughter if death has en-

sued, the person by whose act * * * such injury * * * shall be occasioned shall * * * be punished * * *." (All section references are to RSMo 1959, V.A.M.S.)

of the country. According to Welch, Thomas did not confirm the threat as to the little white dog but did say that Welch had told Thomas he was going to shoot Watson's big dogs for running rabbits in Welch's alfalfa and knocking it down. On the way home in the car Eggar pulled Welch and Watson shoved him, "just the same manner as they put [him] in the car." One White testified that six weeks before the trouble with Welch, Watson told him Welch would be run out of the country. Watson, prior to the occasion in question, told one Morehouse that when he got through with Welch "he wouldn't be a-botherin' around Romance there for awhile." Watson's blows fractured Welch's jawbone. Welch was in the hospital three days. For six weeks he wore a brace which was screwed into his lower jaw to hold it in place while it healed.

Defendant's evidence showed that Watson asked Welch why he killed his little white dog; that Welch denied killing the dog but said he knew who did. Watson asked "who" and Welch said it was none of his business; that he (Welch) did not kill the dog. Watson said he knew Welch did because he heard the shot. Welch called him a liar, and drew back his right arm as though he was going to strike at Watson, and Watson threw up his left hand and Welch struck 'Watson on the arm. Watson then "punched" Welch with his right hand. Watson had no weapon "or anything" in his hand. After more words Welch grabbed 'Watson by the left arm and started kicking him on the shins, hard enough to cause bleeding and leave scars. Watson then struck Welch a second time, with his fist, on the left jaw. He struck both blows trying to defend himself, believing from the threatening gestures that it was Welch's intention to do him harm. After Watson struck Welch the second time Welch "kinda squatted down" and said "Don't hit me no more." Watson replied, "O.K." and desisted. The parties then

agreed voluntarily to go see Alvis Thomas. Welch was not forced or shoved into the car. Thomas told Watson in the presence of Welch that Welch had threatened to kill his beagles and white dog. Watson testified that he had no prior intention to do any bodily harm to Welch. Eggar did not touch Welch at any time during the fracas. There were no cuts, scratches, abrasions or anything to indicate that Watson had used anything other than his bare fist in striking Welch.

On this appeal appellants have made three points which are supported by citation of authorities and carried forward in their argument.

 Appellants' first point is that the court erred in overruling their motion for judgment of acquittal at the close of all the evidence, for failure to prove that appellants' acts would have constituted murder or manslaughter if death had ensued. Appellants argue that in a prosecution under § 559.210[1] all of the defenses applicable to murder and manslaughter prosecutions are available to a defendant; that under § 559.050 a homicide is deemed excusable if it occurs in the doing of any lawful act by lawful means, with usual and ordinary caution, and without unlawful intent, or if it occurs upon sudden combat, without any undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel or unusual manner. Conceding that great bodily harm was done, appellants contend that the evidence, viewed in the light most favorable to the state, does not show that appellants' acts would have constituted murder or manslaughter if Welch had died; that Watson's acts were excusable or justifiable under the circumstances (sudden combat, no dangerous weapon but only naked fists used; no undue advantage taken; no cruel and unusual assault).

Appellants' first point is without merit. The state's case, if believed, disclosed no

such lawful action on appellants' part as that portrayed by appellants in their testimony. While there is no contention that appellants' acts would have constituted murder if death had ensued, their acts, considered from the viewpoint most favorable to the state, would have supported a conviction of manslaughter, which is defined by § 559.070 as the killing of a human being by the act of another not declared by law to be murder or excusable homicide. And this is true notwithstanding the great bodily harm was done only with the fists. State v. Webb, 266 Mo. 672, 182 S.W. 975, 976. From the evidence the jury could have found, death ensuing, that defendant Watson provoked an argument in the course of which defendants committed an inexcusable and unjustifiable assault and battery upon Welch which resulted in his death. "Where death results from unlawful assault and battery and the assault is without malice, the assailant is guilty of manslaughter, even though death was not intended and the assault itself was not such as to be likely to result in the death of the person assaulted." See State v. Kinard, Mo.Sup., 245 S.W.2d 890, 891 [2], in which defendant struck deceased on the right side of the face with his fist, knocking him down and fracturing his skull, and this Court held the jury reasonably could find defendant guilty of manslaughter. And see State v. Black, 360 Mo. 261, 227 S.W.2d 1006, 1010 [12], and State v. Frazier, 339 Mo. 966, 98 S.W.2d 707, 713 [6].

■ Appellants' second point is that the court erred in failing to give an instruction on common assault. Section 556.230 authorizes the jury or court trying a prosecution for felonious assault to acquit the defendant of the more serious charge and find him guilty of any offense, the commission of which is necessarily included in that charged against him. Common assault is included within a charge of felonious infliction of great bodily harm under § 559.-210; a simple assault must be proved as a necessary element of the greater offense.

42 C.J.S. Indictments and Informations § 287 b., p. 1310. Section 546.070(4) requires the court to instruct on all the law of the case. It is not mandatory, however, in all cases to instruct on a lesser offense or on an offense included within that charge. An instruction on the lesser or included offense is required only if there is evidence to support such a submission. Where the evidence so clearly shows the commission of the more serious crime as charged that no other interpretation of the defendant's conduct is reasonably possible, and there is nothing to justify a finding of common assault only, a defendant charged with a felonious assault is not entitled to an instruction on common assault. State v. Burns, Mo.Sup., 328 S.W.2d 711, 713 [5, 6]; State v. Bazadier, Mo.Sup., 362 S.W.2d 603, 607 [9]. But "[i]t is only where the state's evidence, if found to be true, establishes a felonious assault *and no other* that the defendant must either be convicted of the offense as charged, or else be entitled to a verdict of not guilty." (Emphasis supplied.) State v. Lynn, Mo.App., 184 S.W. 2d 760, l. c. 767; State v. Barton, 142 Mo. 450, 44 S.W. 239; State v. Schloss, 93 Mo. 361, 6 S.W. 244. The evidence in this case does not necessarily compel one of two results (conviction of inflicting great bodily harm, under § 559.210, or outright acquittal). The evidence justifies a submission and conviction of common assault. There is no evidence that the assault was made with a dangerous and deadly weapon. Under the state's evidence Eggar used his hands, and Watson used his fists only, striking but two blows to Welch's jaw. There was evidence of provocation, that Welch drew back his right arm in a threatening manner and struck Watson on the arm, immediately before Watson struck him. The evidence was such that a jury reasonably could interpret defendants' conduct as a common assault merely, thus requiring an instruction on the lesser offense.

■ This error alone is sufficient reason to reverse the judgment. On remand and retrial, however, the court again will be con-

fronted with the question raised by appellants in their third point, i. e., whether the court on these facts was required to give an instruction on accident or misfortune based upon § 559.050.[2] For that reason we will consider the point. The state apparently concedes that any defense submissible in a manslaughter case under § 559.060 [3] can be submitted in a charge of felonious wounding under § 559.210.[1] The state contends, however, that there was no error in not submitting the defense of accident or misfortune because there was no evidence that the injuries in this case were caused thereby; that under all of the evidence defendant Watson provoked the incident, and "meant to strike Eldon Welch on the jaw each time he struck him. The breaking of Eldon Welch's jaw by these appellants would be the 'natural and ordinary consequences of defendant's intentional acts.' "

▮ If the evidence warrants an instruction on excusable homicide because of accident, such an instruction must be given as a part of the law of the case, whether requested or not, and it is error not to give such an instruction. State v. Vincent, Mo. Sup., 321 S.W.2d 439, and cases cited, l. c. 444.

We find no evidence in this case, however, warranting the giving of an instruction on accident or misfortune. The two blows administered to the jaw of Welch by Watson were not accidental, and the effect of the blows was not accidental. All of the evidence, including that of appellants, shows that the two blows delivered to the jaw of Welch were intentionally inflicted. According to Watson's testimony he inten-

tionally struck Welch in the necessary defense of his person, anticipating bodily harm from Welch. The issue of self-defense was properly submitted to the jury. There is no substantial evidence in the record that Watson "did not intend to inflict the wounds which he did, nor is there anything to show that such wounds were not the natural and ordinary consequences of [Watson's] intentional acts." State v. Vincent, supra, 321 S.W.2d l. c. 444. There was no error in failing to instruct on accident or misfortune.

Appellants rely heavily upon State v. Coff, 267 Mo. 14, 183 S.W. 287, and State v. Reed, 154 Mo. 122, 55 S.W. 278. Those cases are not in point. In the first case, there was evidence that defendant's head struck the curb of a gutter after he was shoved by the defendant. In the second case, there was evidence that the cause of death was that defendant's head struck a pick lying on the sidewalk. In both of those cases there was evidence, lacking here, that after the deceased was struck a blow by the defendant something else occurred, something intervened, which was not the natural and ordinary consequence of defendant's intentional acts and which, by way of accident or misfortune, was sufficient to account for the final result.

The judgment is reversed and the cause remanded for a new trial.

COIL, C., not participating.

HOLMAN, C., concurs.

1. See Note 1 on page 520.

2. "Homicide shall be deemed excusable when committed by accident or misfortune, in either of the following cases: (1) * * * in doing any * * * lawful act by lawful means, with usual and ordinary caution, and without unlawful intent; or (2) In heat of passion, upon any sudden or sufficient provocation, or upon sudden combat, without any undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel and unusual manner."

3. "Whenever it shall appear to any jury, upon the trial of any person indicted for murder or manslaughter, that the alleged homicide was committed under circumstances or in any case where, by any statute or the common law, such homicide was justifiable or excusable, the jury shall return a general verdict of not guilty."

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges of the Division concur and STONE, Special Judge, concurs.