**STATE of Missouri, Respondent,**

v.

**Walter Wallis MAY, Appellant.**

**No. 56576.**

Supreme Court of Missouri, Division No. 2.

May 8, 1972.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Jon Dermott, Joplin, Court Appointed Atty., for appellant.

FINCH, Alternate Judge.

This case arises out of a robbery of the Holiday Inn at Joplin, Missouri. The jury found defendant guilty of robbery in the first degree but could not agree on punishment. The trial court sentenced defendant to a term of seven years in the custody of the Department of Corrections.

The principal issues raised on this appeal are (1) that the court should have excluded the in-court identification by the robbery victim (Carver) on the ground that the exhibition of certain photographs to him by the police was so impermissibly suggestive as to taint all subsequent identification by him, and (2) that the court should have quashed evidence as to certain credit cards bearing the name Carver obtained by an allegedly illegal search and seizure of an automobile.

The state's principal witness was M. L. Carver, the night auditor at the Holiday Inn. He testified that during the early morning hours of October 29, 1967, two men came to the desk and asked if a man by the name of Benson was registered. Carver checked his records, including reservations, and advised that Benson was not registered and had no reservation. The men said, "He will be in," and left. Carver started back to work but shortly one of the men (identified by Carver as defendant) came back in, opened the small gate at the desk and stepped back of the counter. He pointed a gun at Carver, handed

him a paper sack and said, "Fill it up." The other man who had accompanied defendant when they first came in was observed by Carver standing at a place where he could watch the entrances to the lobby. Carver unlocked the cash drawer and took out the money which he then put in the sack. Defendant next asked where the bar receipts were kept. Carver advised that he did not audit those but a bag containing those receipts was placed in a chute. Defendant reached in and was able to get those receipts, which he put in the sack. The total taken was something over $400.

There was some conversation as to whether the Holiday Inn had a security guard, after which defendant walked Carver back into another room where he made him lie down on his face and proceeded to tie his wrists. Defendant reached into Carver's hip pocket and got a folder containing credit cards, saying to his companion he wanted to get something for identification so he would know whom to come back and get if the victim called the cops.

When Carver was able to free himself, he called the police, giving them an account of the robbery and describing the men who had held him up. Shortly, Carver was called to the police station where he was shown two photographs by Officer Flenner of the Joplin Police Department, one of which was a photograph of defendant May and the other of James Whitling. Officer Flenner stated that he thought these were pictures of the men who had robbed Carver but asked him if he could identify the two men. Carver did identify the men as the two who had robbed him at the Holiday Inn. At that time, the Joplin police did not have these men in custody and Carver did not observe them in a lineup.

On November 2, 1967, May and Whitling were arrested in Las Vegas, Nevada, in connection with another offense committed there. At that time, a Las Vegas police officer found credit cards bearing the name of Mr. Carver in an automobile belonging to Whitling.

The first point raised on appeal is that the trial court erred in permitting an in-court identification of defendant by witness Carver for the reason that his earlier identification of defendant's photograph for Officer Flenner was so impermissibly suggestive as to taint any subsequent in-court identification. The state did not undertake to enhance its case by showing that Carver had identified a photograph of defendant. This was developed on cross-examination by counsel for defendant who, by his questions, evidenced familiarity with the fact that photographs had been shown to Carver and the circumstances surrounding the occurrence.

■ We find no merit in this contention. In the first place, no objection of any kind was made at the trial to the in-court identification and there had been no prior motion to suppress such testimony. Instead, counsel for defendant sought by cross-examination of Carver to discredit his in-court identification by showing what occurred when Officer Flenner exhibited the photographs of defendant May and Whitling to Carver, and also by seeking to show variances between the description of defendant May given by Carver to the police following the robbery and his actual appearance at the time of trial. Hence, no asserted error is preserved for review.

Defendant's brief suggests that Carver's in-court identification of defendant should be treated as plain error, but we decline to do so. The Supreme Court of the United States in the leading case of Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253, said:

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentifi-

cation may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

■ When we look at the facts of this case, it is clear that this is not a case of misidentification. Carver, according to the testimony, had ample opportunity to observe defendant during the course of the robbery. He originally came to the desk and had a conversation with Carver. Shortly, he returned, coming back of the desk, and at gunpoint robbed Carver. He had Carver unlock the cash drawer and remove the money therefrom. They had conversation about where the bar receipts were. They talked about whether the motel had a safe and whether it had a security guard. Thereafter, defendant took Carver to another room and tied him up. When asked as to whether he remembered defendant's appearance, Carver stated that a man's looks are rather impressive when you observe them at gunpoint, and that you do remember them, and that he did. Obviously, this series of events took some little time, during all of which time defendant May was unmasked and Carver had ample opportunity to observe him closely. Defendant's counsel did as suggested in Simmons, and utilized cross-examination of the witness to expose to the jury the potential for error in the procedure. We hold that the evidence is sufficient to sustain the trial court's ruling that the in-court identification was admissible.

Defendant's second point is that error was committed when the trial court permit-

ted Officer Lyons of the Las Vegas Police Department to testify that in searching a 1963 Pontiac belonging to James Whitling the officers found some credit cards belonging to Mr. Carver.

The state did not offer the credit cards in evidence or have them marked as exhibits, but Officer Lyons was permitted to testify that sometime after May and Whitling were arrested on the afternoon of November 2, 1967, officers did locate a Pontiac which belonged to Whitling and in searching it they found credit cards belonging to Carver in the glove compartment and trunk of the car.

Defendant objected to this testimony and out of the hearing of the jury interrogated Officer Lyons as to what occurred. That testimony disclosed that when arrested, May and Whitling were in a 1964 Chevrolet. About thirty minutes later, officers located a 1963 Pontiac Sedan parked in the rear of a parking center. It was ascertained that this car was the property of Whitling. The officers examined the car for fingerprints and searched the car and in the glove compartment and trunk found the Carver credit cards. Neither May nor Whitling were present when the car was found or when it was searched. No one testified that they had ever seen May in the car, and there was no evidence to show that he had ever used the car or even been in it.

■ The trial court overruled defendant's objection to this evidence on the basis that defendant May had no standing to object to the search of the Whitling car in which the credit cards were found. We agree. The recent decision of the United States Court of Appeals for the Eighth Circuit in United States v. Goldenstein, No. 71–1294, and United States v. John Larry Ray, No. 71–1342, 456 F.2d 1006, decided March 23, 1972, is directly in point. In that case, Goldenstein and Ray were charged with bank robbery of a bank at St. Peters, Missouri. At the trial the government offered in evidence against both de-

fendants currency in the amount of $12,900 which Portland, Oregon, police found in the search of a hotel room in which Goldenstein was the registered guest. The officers had no search warrant and the search was not incident to an arrest, as Goldenstein was not present at the time. The government contended that the evidence was admissible under the emergency or hot pursuit doctrine, and offered evidence in support thereof, but for reasons not pertinent here the court held that the evidence was not admissible against Goldenstein and reversed his conviction. However, the conviction of Ray was affirmed. In overruling Ray's contention that admission of the money as to him was reversible error, the court said:

"He urges that the introduction in evidence of the money seized from Goldenstein's room resulted in severe prejudice to him. The seized money is admissible as to Ray. The exclusionary rule of Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, and Mapp v. Ohio, supra [367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081], applies only to a party from whom the property had been illegally seized in violation of Fourth Amendment rights. Evidence illegally obtained from one defendant is not excludable against a co-defendant when the Fourth Amendment rights of the co-defendant have not been violated by the search and seizure. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176; Standard Oil Co. v. State of Iowa, 8 Cir., 408 F.2d 1171, 1174–1175.

"There is no evidence that Ray was in Portland or that he had any occupancy rights in the Portland hotel room assigned to Goldenstein. No constitutional right of Ray's was violated by the seizure. Thus if Ray were tried alone, the seized money would be admissible against him provided there is other substantial evidence connecting him with the robbery and with Goldenstein."

Paraphrasing the above holding, there was no evidence that May had been in Whitling's car or had any occupancy rights therein. There was no evidence that he had ever driven it or ever been a passenger in it, or even been seen around it. At the time of their arrest, May and Whitling were in a Chevrolet. Hence, the testimony as to the credit cards was admissible against May under the doctrine of the John Larry Ray case even if it be assumed that the search was unlawful as to Whitling, the owner of the automobile. Under the Ray case, all that was required was that there be other substantial evidence connecting defendant May with the Holiday Inn robbery and with Whitling. There was such testimony in the eyewitness testimony of Carver, who positively testified that both men were present and participated in the robbery and that at that time defendant took from him a package of credit cards. We hold that the admission of the evidence in question was not reversible error.

■ Defendant's third point is that the court erred in denying him a continuance for the purpose of either bringing witnesses to the trial or taking their depositions. Defendant sought to establish an alibi by showing that he was in Oil City, Pennsylvania, on October 28 and that he purchased an automobile there on the morning of October 30, 1967.

The record on appeal does not show any application for continuance by the defendant. Instead, it shows that the case was called for trial and the defendant announced ready. Furthermore, the transcript shows that prior to the trial, defendant's counsel had taken the depositions of the witnesses to whom he refers by means of interrogatories, and all of such testimony and attached exhibits were offered in evidence and heard by the jury. Those depositions provided the jury with the testimony of these Pennsylvania people that defendant was in Oil City on October 28 and purchased a car on the morning of October 30. We overrule defendant's third assignment.

Finally, defendant complains that language used in the state's closing argument was abusive and unduly prejudicial. He concedes that no objection of any kind was made to the argument, but suggests that it constituted plain error. We do not agree.

Judgment affirmed.

MORGAN, P. J., and HENLEY, J., concur.

DONNELLY, J., not sitting.