**STATE of Missouri, Respondent,**

v.

**Lawrence LEINDECKER, Appellant.**

**No. WD 30895.**

Missouri Court of Appeals,
Western District.

Feb. 4, 1980.

Paul Crider, Jr., Rolla, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a jury conviction and jury imposed sentence of twenty years for the offense of assault with intent to do great bodily harm with malice. The judgment is affirmed.

Appellant presents one point, alleging error by the trial court in its refusing to submit to the jury appellant's proffered in-

struction on the lesser and included offense of common assault because of the alleged disparity in the evidence as to the size of the wound inflicted which, as appellant contends, would have left the jury free to have returned a verdict for the lesser offense.

While the evidence is controverted on some of the specific facts, (the differences herein being pointed out), the record reveals that on December 31, 1978, appellant and others attended a party at the home of Tony Shore and Jerry Crider in Pleasant Hill, Missouri. Jerry Crider left the house about 8:00 p. m. At approximately 10:00 p. m., appellant and one Jimmy Quinn engaged in a fight in the kitchen. They were asked to go outside, where the fight continued. At one point, Quinn had appellant down, and one Dewayne Newman pointed a gun at Quinn and threatened to kill him. At this point, appellant, Newman and a third person, Steve Baker, left by automobile.

Between 11:30 p. m. and midnight, appellant and others returned to the house. They arrived at the same time Jerry Crider was pulling up to the house. Steve Baker, who drove the automobile in which appellant was a passenger, drove alongside the Crider automobile. Baker got out of his automobile and began striking Crider before Crider could get out of his own automobile.

This confrontation caused persons in the house to proceed outside. David Francy, a witness, testified that as the crowd from inside was standing outside the house, appellant approached them with a knife about five to six inches long. Francy testified that appellant "threatened to spill my guts". He also testified that appellant "trotted" to where the complainant was standing and with a quick underhanded jab, stabbed the complainant in the bicep and armpit.

Francy was asked the following question by the prosecutor and gave his response:

"Q. (BY MR. HAMILTON) Were you—Could you tell me your best estimate of the distance that that wound was, that it traversed on Sam Shewmaker?

A. Probably six inches."

Complainant, Sam Shewmaker, testified he did not see the knife until appellant ran toward him and stabbed him. Shewmaker testified the knife blade entered the front of his left bicep and exited the rear of the bicep and entered his left armpit. Evidence showed that medical treatment was needed for Shewmaker the night of the assault, and four or five subsequent or additional trips to the doctor were necessary in treatment of the wound.

Shewmaker and others testified he neither said anything nor made any motion toward appellant prior to the stabbing.

Conversely, appellant testified that upon returning to the house, he and his two companions observed people out in front of the house so they got out of their automobile. As they were standing there, appellant testified he saw a number of men running toward him. One of these men, he stated, was carrying a shotgun. He further testified that while backing up from this crowd, someone handed him a knife. Appellant said that while he was backing up with the knife in front of him, the complainant got in his way and ran into the knife.

Stephen Baker testified on appellant's behalf, and testified that four men, including Shewmaker, rushed at appellant. He testified he did not witness the actual stabbing. Edwin Baker also testified for the defense, but testified he never observed any flight or the stabbing.

At the close of the evidence, the trial court gave instructions on assault with intent to maim with malice, assault with intent to do great bodily harm without malice and an instruction on accident. Appellant's requested instruction of a lesser included offense was refused.

The crime of common assault is a lesser and includable offense within the crime for which appellant stands convicted, see *State v. Howard*, 564 S.W.2d 71, 76 (Mo.App.1978).

The trial court, in criminal proceedings, is required to instruct the jury in conformity to § 546.070(4), RSMo 1969, which reads as follows:

"*546.070. Order of trial.*—The jury being impaneled and sworn, the trial may proceed in the following order:

\* \* \* \* \* \*

(4) Whether requested or not, the court must instruct the jury in writing upon all questions of law arising in the case which are necessary for their information in giving their verdict; which instructions shall include, whenever necessary, the subjects of good character and reasonable doubt; and a failure to so instruct in cases of felony shall be good cause, when the defendant is found guilty, for setting aside the verdict of the jury and granting a new trial . . ."

■ Pursuant to MAI–CR 2.05, the trial court is required to submit an instruction on lesser and included offenses, whether requested or not. The requirement of MAI–CR 2.05, however, has been modified, as interpreted by the cases, so that the mandatory instruction upon the lesser and included offense is requisite only in those cases where there is evidence to support the finding of the commission of the lesser offense, see *State v. Washington,* 357 S.W.2d 92 (Mo.1962); *State v. Leigh,* 466 S.W.2d 685 (Mo.1971) and *State v. Watson,* 364 S.W.2d 519 (Mo.1963).

In *State v. Howell,* 524 S.W.2d 11 (Mo. banc 1975), at 21, the Supreme Court declared:

"In the past and at this time the controlling factor with respect to the submission of a lesser offense in assault cases is whether the *facts in evidence* are sufficient to arguably show a lack of an essential element of the higher degree of the offense."

Appellant contends that there was a great disparity in the evidence as it related to the size of the wound inflicted. By way of argument, appellant would have this court conclude that such alleged disparity gave rise to evidence from which the jury could have found appellant did not act with the necessary intent to warrant a conviction for assault with intent to do great bodily harm.

The major problem with appellant's contention is that he exclaims a disparity where none exists. The record reveals the following colloquy, which took place between the complainant (the victim of the stabbing) and the prosecuting attorney:

"Q. And where did he stab you?

A. Right like—went in here and come out here, and went up in there. (Indicating)

Q. Okay. You say it went in then on what would be the outside of your left bicep; is that correct?

A. Well, my right.

Q. Well, you can show it. You've got a short sleeve shirt on, don't you? Can you show us here?

A. (Indicating.) See, it went in there, come out in there and went up in there like there on my arm pit.

Q. Went in on what appears to be about the front of your bicep.

A. Yes.

Q. Came out on the back part of your bicep on your left arm; is that right?

A. Yeah.

Q. About how deep did it go in there on your arm pit?

A. Well, I don't know. I would say about an inch or so. I don't know."

David Francy's earlier indication that the distance of the wound was approximately six inches also disproves this disparity.

There is nothing inconsistent, nor is there to be found any disparity, between the testimony of these two witnesses regarding the size of the wound inflicted upon the complainant. The argument of appellant is further dispelled by the failure of the evidence referred to as being relevant to the element of intent in any manner.

As regards assault cases, common assault, pursuant to § 559.220, RSMo 1969 [1] has been defined as an "assault or beat(ing) or wound(ing) [of] another, under such circumstances as not to constitute any other offense herein defined." In determination of intent, the jury can consider the type of weapon used, the manner and circumstances under which it is used, the results of its use and other relevant factors, see *State v. Kopf,* 481 S.W.2d 7 (Mo.1972). That the nature and extent of injuries are circumstances relevant and material to the issue of intent, see *State v. Seemiller,* 558 S.W.2d 212 (Mo.App.1977).

In order that an accused can be afforded the submission of an instruction to include the lesser offense of common assault, there must be evidence of record which would support a finding of common assault, see *State v. Surgeon,* 456 S.W.2d 293 (Mo.1970) and *State v. Goodman,* 490 S.W.2d 86 (Mo. 1973).

In the instant case, there was conflicting evidence to support a finding of an assault with intent to do great bodily harm without malice, or an assault with intent to maim with malice or accident. The evidence simply does not support the basis for a finding of common assault. Appellant was either guilty of an assault with intent to maim with malice, or an assault with intent to do great bodily harm without malice, or he was innocent of the charges. This was for the jury to determine. The record reveals there was evidence to support the finding of the jury relating to the use of a deadly weapon, and that same evidence fails to support appellant's argument of disparity over the wound inflicted to warrant the submission of an instruction on the lesser and included offense of common assault.

The point of error alleged by appellant is ruled against him and for the reasons set forth herein, the judgment is in all respects affirmed.

All concur.

---

1. Under the disposition table for the new criminal code, § 559.220, RSMo 1969 is now § 565.-070, RSMo 1978.