**STATE of Missouri, Respondent,**

**v.**

**Arthur F. STRUBBERG, Appellant.**

**No. 62104.**

Supreme Court of Missouri,
En Banc.

May 11, 1981.

Rehearing Denied June 8, 1981.

Frank K. Carlson, Public Defender, Union, for appellant.

John Ashcroft, Atty. Gen., Edward F. Downey, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

Arthur Strubberg was convicted of assault with intent to kill with malice aforethought in violation of § 559.180, RSMo 1969, and sentenced to a term of thirty years imprisonment.[1] On appeal, the Missouri Court of Appeals, Eastern District, affirmed his conviction. The case was transferred to this Court for the purpose of reexamining the existing law on the use of limiting instructions under Missouri's Mental Responsibility Law and instructions on lesser included offenses. Rule 83.03. We review as on original appeal. Mo.Const. Art. V, § 10; Rule 83.09.

Appellant contends that the trial court erred: (I) in failing to give MAI–CR 2.36; (II) in failing to instruct on the lesser included offenses of mayhem in certain circumstances and common assault, § 559.210, RSMo 1969, and § 559.220, RSMo 1969, respectively; (III) in failing to declare a mistrial for improper remarks by the prosecutor during closing argument; (IV) in refusing to allow certain questions on redirect; and (V) in admitting into evidence information gathered during a police interrogation when appellant had not been read his *Miranda* rights immediately prior to the interrogation. We agree with the court of appeals that appellant's conviction should be affirmed.

On February 11, 1977, Josephine Noelker drover her car to a park in Union, Missouri, to eat lunch. She was seated on the driver's side of the front seat when appellant opened the door of her car, held the cutting edge of a knife to her throat, and said, "Don't scream, I've got a knife, I'll stab you." Appellant got into the car and attempted to climb over Mrs. Noelker to sit in the passenger's seat. As he was making this move, it was necessary to remove the knife from Mrs. Noelker's neck, and she escaped. Appellant subsequently was arrested and given his *Miranda* warnings, which he said he understood. He confessed the attack on Mrs. Noelker to Officer Brune. Officer Brune testified appellant told him his reason for committing the attack was "seeing blood in his mind" and "feeling that he had to kill somebody." Appellant pled not guilty at his arraignment. These facts are not in dispute. Appellant concedes in his brief that "[d]efendant's capacity to form the intent to kill ... was the only real factual issue in the case...."

I

Prior to trial, on motion made pursuant to § 552.020.2, RSMo Supp.1975, appellant was granted a court ordered psychiatric examination to determine his fitness to stand trial. The report of Dr. Crane, the examining psychiatrist, shows: (1) that appellant suffers from mild retardation that has existed since birth; (2) that appellant understands the proceedings against him and is able to assist in the preparation of his defense; and (3) that appellant knew and appreciated the nature, quality, and wrongfulness of his conduct and was capable of conforming his conduct to the requirements of law.

At trial appellant called Dr. Crane as his sole witness in an attempt to prove "diminished mental capacity" or "partial responsi-

---

1. The physical attack that is the basis for the assault charge in this case occurred on February 11, 1977. The court ordered examination of appellant involved in this appeal was ordered by the trial court on June 7, 1977, and the examination occurred on June 10, 1977. All relevant statutory references are to statutes in effect on these dates unless otherwise indicated.

bility." [2] On direct, Dr. Crane testified in more detail regarding his examination and the conclusions reflected in his report. He said that appellant suffered from the mental defect of mild retardation, that he had received very little supervision as he was growing up, and that he had a history of drinking, stealing, firesetting, and fighting. Dr. Crane testified that it was his opinion that appellant at times acted out of impulse, and when doing so thought little about the consequences of his acts before he did them. While defense counsel was able to get the psychiatrist to say that it was his impression that appellant "did not have that intent [to kill]", on cross examination the doctor reiterated the opinion expressed in his report that appellant did "know and appreciate the nature, quality and wrongfulness of his conduct and was capable of conforming his conduct to the requirements of law." Appellant now contends that pursuant to § 552.030.6, RSMo 1969, the jury should have been instructed that the information Dr. Crane received during his examination was "admitted solely on the issue of the mental condition of the defendant at the time of the offense charged against him ... [and should not be used] as evidence that defendant did or did not commit the acts charged against ... [him]." MAI–CR 2.36. Appellant neither offered nor requested MAI–CR 2.36 at the time of trial and now contends that the giving of the instruction was mandatory.

In order to rule upon appellant's contention, it is necessary to examine all relevant sections of our Mental Responsibility Law

relating to court ordered examinations, including the historical background of these sections.

The Missouri Mental Responsibility Law was for the most part patterned after the Model Penal Code (1962). *See State v. Anderson*, 515 S.W.2d 534, 538 (Mo. banc 1974); Richardson, Reardon, & Simeone, Missouri's Mental Responsibility Law, A Symposium, 19 J.Mo.Bar 645 (1963).

Missouri's Mental Responsibility Law, like the Model Penal Code, makes provision for two types of pre-trial, court ordered psychiatric examinations. Missouri provides for these examinations in § 552.020.2, RSMo Supp. 1975, (hereinafter referred to as an ".020 examination") and § 552.030.4, RSMo 1969, (hereinafter referred to as an ".030 examination"). The purpose of the .020 examination is to determine the fitness of the accused to stand trial. The purpose of the .030 examination is to help determine the availability to the accused of the defense of not guilty by reason of mental disease or defect which will excuse responsibility for the acts charged.

The .020 examination is ordered almost as a matter of routine upon request of the state or the accused or upon the trial court's own motion. *See Bryant v. State*, 563 S.W.2d 37 (Mo. banc 1978). The .030 examination is only ordered upon motion of the state or the accused after the accused has chosen to rely on the defense of not guilty by reason of mental disease or defect excluding responsibility for the acts charged.

2. At common law in Missouri a criminal defendant could not introduce evidence of a mental disease or defect to show that he did not possess the culpable mental state required as an element of the crime charged. *See State v. Holloway*, 156 Mo. 222, 231, 56 S.W. 734, 737 (1900). In 1963 the legislature enacted a Mental Responsibility Law, Laws of Mo. 1963, p. 674 (hereinafter referred to as S.B. 143). Section 552.030.3, RSMo 1969, which was derived from S.B. 143, § 3, provided in part, "Evidence that the defendant did or did not suffer from a mental disease or defect shall be admissible (1) To prove that the defendant did or did not have a state of mind which is an element of the offense; ..." In *State v. Garrett*, 391 S.W.2d 235, 243 (Mo.1965), this Court indicated that

the enactment of § 3 of S.B. 143 did not adopt the diminished capacity doctrine. However, in *State v. Anderson*, 515 S.W.2d 534, 541 (Mo. banc 1974), we overruled *Garrett* on this point, in effect, adopting the partial responsibility or diminished capacity doctrine. In this case, no special instruction was given on the diminished capacity doctrine, as is now embodied in MAI–CR2d 3.74, effective January 1, 1979. Rather, appellant chose to converse the prosecution's verdict director on the element of intent. A converse instruction is sufficient to put the issue of diminished mental capacity before the jury. *See State v. Cason*, 596 S.W.2d 436, 438–39 (Mo.1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 397, 66 L.Ed.2d 243 (1980).

Sections 552.030.2, RSMo 1969, and § 552.-030.4, RSMo 1969, require that the defendant do one of two things before a motion for an .030 examination can be granted. The defendant must either, (1) at the time of pleading enter a plea of not guilty by reason of mental disease or defect excluding responsibility; or, (2) within ten days after a plea of not guilty or in the trial court's discretion at a later date after good cause is shown, file a written notice of an intention to rely on such defense. The state may accept the plea, thereby triggering treatment procedures contained in § 552.040, RSMo 1969, or the state may refuse to accept the plea. If the state refuses to accept the defendant's not guilty by reason of mental disease or defect plea, then the trial court is required to order the .030 examination upon the motion of either party [3] to help determine the availability of the defense of not guilty by reason of mental disease or defect excluding responsibility for the acts charged.

The Model Penal Code has but a single section, § 4.09, dealing with the admissibility of information received during either the .020 type examination or the .030 type examination. It is in substantially the same form as § 552.030.6, RSMo 1969, upon which appellant relies.

In this respect, our legislature deviated from the format of the Model Penal Code and created two separate sections relating to admission of evidence obtained by the physician during these examinations. In the section relating to the .020 examination, § 552.020.9, RSMo Supp.1975,[4] the General Assembly provided and stated in part:

No statement made by the accused in the course of any examination or treatment *pursuant to this section* and no information received by any physician or other person in the course thereof, . . . shall be admitted in evidence against the accused on the *issue of guilt* in any criminal proceeding then or thereafter pending in any court, state or federal.

(Emphasis added.) In the section relating to the .030 type examination, § 552.030.6, RSMo 1969, the General Assembly provided and stated in part:

No statement made by the accused in the course of *any such examination* and no information received by any physician or other person in the course thereof, . . . shall be admitted in evidence against the accused on the *issue of whether he committed the act charged against him* in any criminal proceeding then or thereafter pending in any court, state or federal. *The statement or information shall be admissible in evidence for or against him only on the issue of his mental condition, whether or not it would otherwise be deemed to be a privileged communication.* If the statement or information is admitted for or against the accused on the issue of his mental condition, the court shall both orally at the time of its admission and later by instruction inform the jury that it must not consider such statement or information as any evidence of whether the accused committed the act charged against him.

(Emphasis added.)

The .020 examination is ordered solely for the purpose of determining fitness of the defendant to stand trial. The public policy against subjecting to trial those who are by reason of mental disease or defect unfit to stand trial is based as much on the interest of the state (the people) as it is on the interest of either of the parties to the trial itself. The examination is directed primarily at the condition of the accused at time of trial. The condition of the accused at the time of the acts charged is *no more* at issue than any other fact recited in the medical history of the person being examined. The wording of § 552.020.9 indicates that the legislature set up what appears to be an absolute bar against admission of any statement made by the accused or evidence obtained during the .020 examination *on the*

---

**3.** *See Garrett v. State*, 486 S.W.2d 272, 273–74 (Mo.1972).

**4.** The present version of the § 552.020.9, RSMo Supp.1975, appears in § 552.020.11, RSMo Cum.Supp.1980.

*issue of guilt.* Nothing relating to the mental condition of the accused appears to be admissible. Having so barred the statements made in this examination, the legislature made no provision for a limiting instruction in this subsection of the act.

When the accused has chosen to avail himself of the defense of not guilty by reason of mental disease or defect excluding responsibility and has taken the steps required to either cause an .030 examination to be ordered by the court or to make himself entitled to use is .020 examination as an .030 examination, he has also waived the physician-patient privilege provided for in § 491.060(5), RSMo 1969. *State v. Swineburne*, 324 S.W.2d 746, 750 (Mo. banc 1959); *State v. Speedy*, 543 S.W.2d 251, 256 (Mo. App.1976). Section 552.030.6, makes specific provision for the waiver of the physician-patient privilege stating: "The statement or information shall be admissible in evidence for or against him, [the accused] only on the issue of his mental condition, whether or not it would otherwise be deemed to be a privileged communication." With the entering of the plea and the waiver of the privilege, the bars are down. The mental condition of the accused at the time of the acts charged is an issue in the trial.

The General Assembly has specifically provided that the trial court may treat the .020 examination as the .030 examination. Section 552.030.4 provided in part:

If an examination provided in section 552.020 was made and the report thereof included an opinion whether at the time of the alleged criminal conduct the accused, as a result of mental disease or defect, did not know or appreciate the nature, quality or wrongfulness of his conduct or as a result of mental disease or defect was incapable of conforming his conduct to the requirements of law, such report may be received in evidence, and no new examination shall be required by the court unless, in the discretion of the court, another examination is necessary.

As a practical matter, we are sure there are other instances where the parties and the court, by agreement, treat the .020 examination as the .030 examination, whether or not it contains the specified statement mentioned in the statute. In any case in which the defendant shows that his .020 examination is being treated by the court as an .030 examination, then evidence obtained through that examination is entitled to all safeguards afforded any other .030 type examination. Our legislature in § 552.030.6 did make provision for and mandated that the limiting instruction must be given both in writing and orally at the time of admission of any statement made by the accused or admission of any evidence against the accused which was obtained during any .030 type examination.

The problem arises when the accused, as appellant has done here, seeks to rely on the doctrine of partial responsibility or diminished capacity and introduces evidence obtained during the .020 examination.

Section 552.030.3, RSMo 1969, is our statutory embodiment of the doctrine of partial responsibility or diminished capacity,[5] and provides in part:

3. Evidence that the defendant did or did not suffer from a mental disease or defect shall be admissible

(1) To prove that the defendant did or did not have a state of mind which is an element of the offense; or . . .

This would appear to be in direct conflict with the absolute bar provided in § 552.020.9, relating to the .020 examination. This Court's primary responsibility is to ascertain the intent of the General Assembly from the language used, to give effect to that intent, and where reasonably possible to reconcile and harmonize statutes dealing with the same subject. *State v. Kraus*, 530 S.W.2d 684, 685 (Mo. banc 1975); *Playboy Club, Inc. v. Myers*, 431 S.W.2d 228, 231 (Mo.1968); *Marty v. State Tax Commission*, 336 S.W.2d 696, 699 (Mo.1960).

---

5. For the history of the "partial responsibility" or "diminished capacity" doctrine in Missouri, see note 2, *supra*.

Reading § 552.020.9 and § 552.-030.3 together and in harmony requires us to conclude that it was the intent of the legislature that the latter section is an exception to the general bar enunciated in the former section. The accused, for the purpose of attempting to establish his partial responsibility or his diminished capacity, may introduce evidence obtained in the .020 examination. To the extent that the accused would offer evidence to prove a lessened state of mind, he does of necessity offer evidence lessening the degree of his "guilt".

Appellant was charged with assault with intent to kill with malice aforethought, § 559.180, RSMo 1969. Appellant could use as evidence testimony of the physician concerning information obtained during the court ordered .020 examination, which testimony indicated a mental defect of mental retardation, to attempt to prove under the *partial responsibility doctrine* that he did not have the capacity to form malice aforethought, thus lowering the *degree* of his criminal responsibility to assault with intent to kill without malice aforethought, § 559.190, RSMo 1969. If appellant wanted to expunge himself of all criminal responsibility for his acts by reason of a mental disease or defect, he could only do so by pleading not guilty by reason of mental disease or defect excluding responsibility and by compliance with all the conditions of § 552.030. The partial responsibility doctrine may not be used by a defendant to avoid all criminal responsibility for his acts.

See Richardson, Reardon, & Simeone, Missouri's Mental Responsibility Law, A Symposium, 19 J.Mo.Bar 645, 711–12 (1963); *State v. Padilla*, 66 N.M. 289, 292, 347 P.2d 312, 314 (1959) ("[The diminished or partial responsibility doctrine] means the allowing of proof of mental derangement short of insanity as evidence of lack of deliberate or premeditated design. . . . [I]t contemplates full responsibility, not partial, but only for the crime actually committed.") Since application of the partial responsibility doctrine presupposes guilt of some crime, appellant necessarily introduced evidence upon the issue of his guilt.[6] Thus, it is difficult to see how appellant can claim to be entitled to a limiting instruction on evidence which he introduces to show a lesser degree of guilt.

In view of the bar mandated by § 552.020.9, subject only to the exception created by § 552.030.3, it appears highly improbable that we can or will be faced with the situation where the state is responsible for injecting prohibited evidence from an .020 examination. If such does occur, we can easily determine the extent to which it may have been prejudicial and order appropriate relief. In any event, we are not here required to meet that issue. We determine only that the oral and written limiting instructions mandated by § 552.030.6 are directed at statements and information obtained in the course of any court ordered .030 type examination after entry of a plea of not guilty by reason of mental

---

6. In stating that "application of the partial responsibility doctrine presupposes guilt of some crime," we do not mean that the defendant in *any sense* admits guilt by injecting the issue of partial responsibility into the case. The state still carries the burden of proving the defendant's guilt beyond a reasonable doubt on all issues submitted to the jury. The defendant merely has the burden of production or the burden of injecting the issue of diminished mental capacity into the case. *See* § 556.051, RSMo 1978 (effective 1/1/79); Notes on Use, MAI–CR 2.04 (discussing "special negative defenses"). In contrast, if the defendant chooses to plead not guilty by reason of mental disease or defect excluding responsibility, the defendant has both the burden of production and the burden of persuasion on the defense. *See*

§ 556.056, RSMo 1978 (effective 1/1/79); Notes on Use, MAI–CR 2.30.

What is meant by the statement that "application of the partial responsibility doctrine presupposes guilt of some crime" is that if the jury determines there is sufficient evidence to support a finding against the defendant on all the factual elements necessary to convict the defendant of a crime before the jury applies the partial responsibility doctrine, then upon applying the partial responsibility doctrine, the jury is only authorized to lessen the degree of the defendant's guilt to that of a lesser included offense. The jury is not authorized under the *partial responsibility doctrine, to completely* exonerate the defendant of all criminal responsibility for his acts.

disease or defect excluding responsibility. The words "any such examination" as used in § 552.030.6 refer to the .030 examination or to an .020 examination that is treated by the trial court as an .030 examination.

■ Appellant did not plead not guilty by reason of mental disease or defect excluding responsibility for the acts charged nor did he give written notice of his intent to rely on such defense. He was not entitled to and did not receive the .030 examination nor could his .020 examination be treated by the court as an .030 examination. It was not error for the court to fail to give MAI–CR 2.36 in this case.

## II

■ Appellant's second contention is that the court erred in not instructing the jury on the lesser included offenses of mayhem in certain circumstances, § 559.210, RSMo 1969, and common assault, § 559.220, RSMo 1969. Appellant was charged and convicted of assault with intent to kill with malice aforethought, § 559.180, RSMo 1969. The jury was also instructed on the lesser included offense of assault with intent to kill without malice aforethought, § 559.190, RSMo 1969. Appellant did not request an instruction on either mayhem in certain circumstances or common assault but did raise this point in his motion for new trial.

Mayhem in certain circumstances can be committed with culpable negligence. *State v. Watson,* 356 Mo. 590, 592–93, 202 S.W.2d 784, 786 (1947). All of the relevant assault crimes require intentional conduct. *See State v. Hammond,* 571 S.W.2d 114, 115–16 (Mo. banc 1978). Thus, mayhem in certain circumstances is not necessarily included within assault with intent to kill with malice aforethought. However, common assault may be a lesser included offense within assault with intent to kill with malice aforethought. *State v. Nelson,* 470 S.W.2d 464, 466 (Mo.1971). Rule 26.02(6), (now Rule 28.02(a)), provided that, whether or not requested, the trial court "must instruct the jury in writing upon all questions of law necessary for their guidance in returning their verdict." *See also* § 546.-070(4), RSMo 1969. Instructions on lesser included offenses may be necessary for the guidance of the jury, provided that there is evidence to support a finding of the lesser included offense. *State v. Watson,* 364 S.W.2d 519, 522 (Mo.1963); *State v. Washington,* 357 S.W.2d 92, 95 (Mo.1962); *State v. Burns,* 328 S.W.2d 711, 713 (Mo.1959); *State v. Leindecker,* 594 S.W.2d 362, 364 (Mo.App.1980); *State v. Webb,* 518 S.W.2d 317, 321 (Mo.App.1975).

■ Both assault with intent to kill with malice aforethought and assault with intent to kill without malice aforethought require a specific intent to kill. The lesser included offense of common assault requires only a general intent to injure. *State v. Hammond,* 571 S.W.2d 114, 115–16 (Mo. banc 1978). A jury instruction on common assault should be given only when there is evidence of an assault with the general intent to injure. The state's evidence proved a specific intent to kill by showing that appellant held the cutting edge of a knife to Mrs. Noelker's throat, and that appellant explained the assault afterward by stating he had the feeling he had to kill someone. The defense attempted to rebut the state's evidence of an intent to kill by attempting to show that appellant acted impulsively and could not form the intent to kill. Viewing the entire record before us, we find no evidence to support a finding of a general intent to injure upon the part of appellant. It was not error to omit the instruction on common assault, § 559.220, RSMo 1969. *See State v. Jackson,* 477 S.W.2d 47, 53 (Mo.1972); *State v. Liendecker,* 594 S.W.2d 362, 365 (Mo.App. 1980).

## III

■ Appellant's third contention is that the trial court erred in not declaring a mistrial after certain improper remarks were made by the prosecutor during closing argument. The first remark that appellant protests is the comment by the prosecutor that, "this is a terrible thing that's happened. Under circumstances this might well be a case of murder." Malice or a

specific intent to kill is not an element of mayhem in certain circumstances. *State v. Webb,* 266 Mo. 672, 680, 182 S.W. 975, 976 (banc 1916). For the reasons previously stated, there was no evidence to support a submission of mayhem in certain circumstances nor was it error to omit the instruction on that offense. Appellant contends that this comment was improper in that it invited the jury to speculate on matters not within the record and to convict appellant for what he might have done, not for what he did. At trial, appellant immediately objected to this remark. The trial court sustained the objection and instructed the jury to disregard the remark by the prosecutor. After the verdict was rendered, appellant moved for a new trial arguing in part that a new trial be granted because of this prosecutorial remark. This motion was overruled.

The seriousness of error in any given argument depends on all the circumstances of the particular case. Whether the error was so serious as to result in prejudice not remediable by anything short of a mistrial rests basically in the sound discretion of the trial court, who was physically present and who could better evaluate ... [the prejudicial impact of the error on the jury.] Precedents in this area, as to what constitutes the degree of seriousness requiring a mistrial, are of only minor value because of actual differences in each case.

*State v. Jasper,* 521 S.W.2d 182, 185 (Mo.App.1975). *See also State v. Vineyard,* 574 S.W.2d 946, 947 (Mo.App.1978). An appellate court should disturb the trial court's disposition of this kind of error only when it abuses its discretion. *State v. Phelps,* 478 S.W.2d 304, 307–08 (Mo.1972); *State v. Smith,* 431 S.W.2d 74, 82–83 (Mo.1968); *State v. James,* 347 S.W.2d 211, 214 (Mo. 1961); *State v. King,* 334 S.W.2d 34, 40 (Mo.1960); *State v. Decker,* 591 S.W.2d 7, 11 (Mo.App.1979); *State v. Guernsey,* 577 S.W.2d 432, 435 (Mo.App.1979); *State v. Brunson,* 559 S.W.2d 60, 62 (Mo.App.1977). We find no such abuse of discretion.

The second remark that appellant protests is the following comment by the prosecutor:

This thing which I carry with me is a letter opener. Depending on how it's used. Cut strings, ribbons on Christmas packages for my wife, and occasionally a screwdriver. But if I cut a girl's throat from ear to ear with it, it's an instrument of murder.

Appellant contends that the comment is improper in that this remark is an unwarranted departure from the evidence by which the prosecutor inflamed the passion of the jury against appellant. Appellant did not object to this statement when it was made at trial. Our review is limited to "[p]lain errors affecting substantial rights...." Rule 27.20(c) (now Rule 29.-12(b)). *State v. McClure,* 504 S.W.2d 664, 670 (Mo.App.1974). Rarely will an improper closing remark affect the substantial rights of a defendant. *State v. May,* 479 S.W.2d 451, 456 (Mo.1972); *State v. Umfleet,* 587 S.W.2d 612, 616 (Mo.App.1979); *State v. Rauch,* 583 S.W.2d 298, 300 (Mo.App.1979); *State v. Bryant,* 548 S.W.2d 209, 211 (Mo.App.1977); *State v. Wendell,* 547 S.W.2d 807, 820 (Mo.App.1976); *State v. Sanders,* 541 S.W.2d 782, 784 (Mo.App. 1976); *State v. Brown,* 528 S.W.2d 503, 505 (Mo.App.1975). This point is without merit.

IV

Appellant's fourth contention deals with a line of questioning that was not allowed on redirect. On cross examination by the prosecutor, Dr. Crane testified that he believed appellant had manufactured his hallucinations of "seeing blood," because appellant told Dr. Crane that he manufactured the story of having hallucinations in order to be sent to the state mental hospital rather than the penitentiary. On redirect the appellant's attorney attempted to introduce testimony from Dr. Crane that the reason appellant preferred the mental hospital to the penitentiary was that appellant had been subjected to several homosexual assaults in the county jail, and he feared that more such assaults would occur if he were sent to the penitentiary. This line of

questioning was objected to by the prosecutor, and the objection was sustained by the trial court. Appellant argues that the testimony concerning the homosexual assaults was necessary to rebut an unfavorable inference brought out on cross examination, citing *State v. Durham*, 418 S.W.2d 23, 28 (Mo.1967) and *State v. Campbell*, 533 S.W.2d 671 (Mo.App.1976). In each of these cases the evidence on redirect did tend to rebut unfavorable evidence brought out on cross examination. In the present case, the unfavorable evidence brought out on cross examination of Dr. Crane was the testimony that appellant had made up the story (lied) about having hallucinations in the hope of going to a mental institution rather than to prison. The unfavorable inference was that appellant had made an untrue statement. The proffered testimony did not rebut the inference that he had made the untrue statement, but rather was self serving in that it sought to show a more acceptable motive for the untrue statement. This point is without merit.

## V

■ Appellant's final point is directed to admission into evidence of information obtained during a police interrogation. Appellant was read his *Miranda* warnings shortly after he was arrested. Appellant said that he understood these warnings. After the *Miranda* warnings had been read to appellant, Officer Brune visited the scene of the attack and found a white Bic butane cigarette lighter. Officer Brune took the lighter to the police station and asked appellant if the lighter was his. Appellant replied that it was. Appellant now contends that this testimony should be inadmissible because a second reading of the *Miranda* warnings was required in view of appellant's limited intelligence. In *State v. Cluck*, 451 S.W.2d 103, 104–05 (Mo.1970), we found that a second reading of the *Miranda* warnings may be necessary, depending on the totality of the circumstances. We do not believe the circumstances in the instant case require a second reading of the *Miranda* warnings. The evidence concerning the cigarette lighter merely tended to show

that appellant had been at the park where the attack occurred. Appellant never disputed that he had been at the park.

The judgment is affirmed.

DONNELLY, RENDLEN, MORGAN and HIGGINS, JJ., concur.

BARDGETT, C. J., dissents in separate dissenting opinion filed.

SEILER, J., dissents and concurs in separate dissenting opinion of BARDGETT, C. J.

BARDGETT, Chief Justice, dissenting.

I respectfully dissent.

Section 552.020.9 provides no statement made by the accused in the course of any examination or treatment pursuant to this section and no information received by any physician or other person in the course thereof, whether such examination or treatment was made with or without the consent of the accused or upon his motion or upon that of others, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding then or thereafter pending in any court, state or federal. The examination required under § 552.020 is the examination with reference to whether or not the accused lacks the mental capacity to stand trial. However, even though that may be the original purpose of the motion for an examination or the judge's order ordering examination, nevertheless subsection (3) requires that the report of that psychiatric examination include, inter alia, an opinion as to whether the accused has a mental disease or defect, and the duration thereof; an opinion as to whether the accused as a result of the mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense; and (4) requires an opinion as to whether at the time of the alleged criminal conduct the accused as a result of mental disease or defect did not know or appreciate the nature, quality or wrongfulness of his conduct or as a result of mental disease or defect was incapable of conforming his conduct to the requirements of law. It is seen,

therefore, that the statement in the principal opinion that an examination with reference to whether the defendant is not guilty by reason of mental disease or defect—an .030 examination—is ordered only if the defense of not guilty by reason of mental disease or defect is asserted is really not significant because both examinations are the same. The mental examination conducted for whatever reason, including an .020 primary reason, requires that the report give an opinion with respect to the inquiry that might be made under .030—whether he has a mental defect or disease excluding responsibility. The purpose of that is to let one examination suffice. Both are mental examinations, and the purpose of the .020 examination includes the purpose for the .030 examination. That becomes apparent from § 552.030.4 where it is stated:

"If an examination provided in 552.020 was made and the report thereof included an opinion whether at the time of the alleged criminal conduct the accused, as a result of mental disease or defect, did not know or appreciate the nature, quality or wrongfulness of his conduct or as a result of mental disease or defect was incapable of conforming his conduct to the requirements of law, such report may be received in evidence, and no new examination shall be required by the court unless, in the discretion of the court, another examination is necessary. . . ."

In the instant case the examination was requested under § 552.020.2 but it included as part of the doctor's opinion more than an opinion with respect to whether or not defendant was mentally capable of standing trial. Even if the examination had been requested under .030, the report would have to have conformed to the requirements of 552.020, subsection 3, part of which has been set forth above.

Section 552.030.6 provides:

"No statement made by the accused in the course of any such examination and no information received by any physician or other person in the course thereof, whether such examination was made with or without the consent of the accused or upon his motion or upon that of others, shall be admitted in evidence against the accused on the issue of whether he committed *the act charged against him* in any criminal proceeding then or thereafter pending in any court, state or federal. The statement or information shall be admissible in evidence for or against him only on the issue of his mental condition, whether or not it would otherwise be deemed to be a privileged communication. If the statement or information is admitted for or against the accused on the issue of his mental condition, the court shall both orally or at the time of its admission and later by instruction inform the jury that it must not consider such statement or information as any evidence of whether the accused committed the act charged against him." (Emphasis supplied.)

The prohibition of the subsection quoted immediately above and the requirement with respect to the court's instruction to the jury, both at the time the evidence is admitted, whether "for or against the accused", as well as at the close of the trial with respect to the instruction, is mandatory and applies to testimony by the physician who made the examination that was requested under either .020 or .030. There is simply no distinction made and none would be tenable.

MAI–CR 2.36 is required to be given whether requested or not. The instruction is required by the court because it is mandated by § 552.030.6, supra.

Although the sequence set forth in the principal opinion on pages four and five with reference to when a mental examination is done with respect to a plea of not guilty by reason of mental disease or defect—after the plea and only if the state refuses to accept the plea—may appear on the face of the statute, nevertheless that is not the way it operates. If a defendant pleads not guilty by reason of mental defect, one can be certain that the prosecutor is not going to accept that plea unless he is persuaded that the defendant actually has a

mental defect that serious. In practical operation the examination is ordered upon the filing of the plea and thereafter the prosecutor will determine whether or not he is willing to accept the plea of not guilty by reason of mental disease or defect. The requirement for the limiting instruction, although found in § 552.030.6, is not restricted to the examination motivated by a plea of not guilty by reason of mental disease or defect. The prohibitions and requirements of § 552.030.6 come into play whenever testimony is given arising out of a mental examination ordered or obtained under Chapter 552 regardless of whether it is § 552.020 or § 552.030.

Section 52.030.3, mentioned in the principal opinion, addresses partial responsibility or diminished capacity and, provides in part:

"3. Evidence that the defendant did or did not suffer from a mental disease or defect shall be admissible

"(1) To prove that the defendant did or did not have a state of mind which is an element of the offense; or . . . ."

It is to be immediately noted that the examination provided under § 552.020 requires, as one of the findings in the report, an opinion by the doctor as to whether the accused "has a mental disease or defect, * * *" that is put in the present tense and is not restricted to a mental disease or defect excluding responsibility nor is it restricted to a mental disease or defect rendering the defendant incapable of understanding the proceedings against him. It is simply whether or not the accused has a "mental disease or defect." It seems clear to me again that one simply cannot decide whether the prohibitions under and requirements of § 552.030.6 are applicable by trying to decide what the primary purpose of the examination was in the first place. In any event, however, the diminished mental responsibility as provided for by § 552.030.3, supra, and the evidence provided for by subsection 6 of that same section, when it refers to any *such* examination, at least refers to an examination permitted by § 552.020 or § 552.030.

In this case, since the defendant had an examination under § 552.020 he was not entitled as a matter of right to another examination under § 552.030 even if he had requested it. See § 552.030.4.

The prohibition found in § 552.030.6, and the limiting instruction (MAI–CR 2.36) do not require that the jury be told that the testimony of the physician may not be considered by them on the issue of *"guilt."* It does require that the jury be advised that *no statement* made by the accused and *no information received by physician in the course of the examination shall be admitted in evidence against the accused on the issue of whether he committed the act charged against him in any criminal proceeding.* That is the substance also of MAI–CR 2.36.

In my opinion it is also incorrect to suggest that when a defendant seeks to avail himself of psychiatric evidence that he did not have a state of mind which is the element of the offense that there is any admission on the part of the defendant that he is guilty of something. It is quite common for the defendant to plead not guilty and not guilty by reason of mental disease or defect. While they may sound inconsistent, they nevertheless simply function so as to leave the burden of proof on the state to prove the defendant guilty beyond a reasonable doubt in other respects.

The reason the defendant is entitled to the limiting instruction in this case is because the statute requires the judge to give it both at the time the evidence is introduced and at the conclusion of the trial, and the court requires that MAI–CR 2.36 be given, pursuant to the statute, whether requested or not.

This is simply a case where the judge was not aware of the statute or the requirement of the instruction and neither was the prosecutor or the defense attorney. While it may be argued that the defense attorney might have known it and did not bring it up for the purpose of injecting error into the case, that is not indicated in the record here. In my opinion the principal opinion in this case will simply provoke confusion in the trial cases and probably bring about a

number of reversals of convictions whenever the trial judge undertakes to decide whether or not he must give the limiting instruction spoken of in this opinion. The long and the short of it is that the statute requires that it be given and the requirement that it be given does not depend upon the purpose for which the mental examination was made, nor is it dispensed with just because the defendant pleads a diminished mental capacity as permitted by § 552.030.-3(1).

There is nothing in Chapter 552 to indicate that the limiting instruction required by § 552.030.6 is not applicable when the defendant seeks to introduce the evidence on a diminished mental capacity basis, as here, which is authorized by § 552.030.3(1). To the contrary, the unequivocal and all inclusive language of § 552.030.6 mandating the limiting instruction as to testimony of the doctor based upon this type examination admits of no exceptions. The instruction is not conditioned upon the nature of the defense but rather upon the source of the information. If the source was an .020 or .030 examination and the testimony is given at trial on mental condition, then that evidence is limited in its admissibility to the issue of mental condition and cannot be used as evidence of whether or not he did the *act charged* against him.

This defendant did not admit to any "guilt." He plead not guilty. Offering evidence of diminished mental capacity does not imply an admission of guilt of a lesser offense. It is simply evidence of a lack of a state of mind which is an element of the offense and does not presuppose guilt of any kind.

We must recognize that the state has the right to introduce evidence of mental capacity to show no diminished mental capacity and that evidence may be offered by the state and consist of the doctor's testimony who performed one of the .020 or .030 examinations. The principal opinion would, I take it, allow that evidence also without the limiting instruction if the evidence only went to diminished mental capacity.

The statutory requirement of the limiting instruction is clear and forthright. In my opinion we ought not to engraft exceptions to that mandate.

Simple adherence to the statutory requirements provided for in Chapter 552 will avoid reversals.

In my opinion it was error to fail to give the oral instruction as required by § 552.-030.6 and the written instruction required by MAI–CR 2.36. I therefore dissent.