STATE of Missouri, Respondent,

v.

Ralph GORDON, Appellant.

No. KCD 27244.

Missouri Court of Appeals, Kansas City District.

July 7, 1975.

Motion for Rehearing and/or Transfer Denied Aug. 5, 1975.

Application to Transfer Denied Oct. 13, 1975.

Willard B. Bunch, Public Defender, Sixteenth Judicial Circuit, R. William Bloemker, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Scott A. Raisher, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

WASSERSTROM, Presiding Judge.

This case was tried on an amended information charging defendant with first degree murder in conventional form and also alleging defendant's conviction of a prior felony. The jury found defendant guilty of first degree murder under an instruction setting forth the elements of felony murder. Under the provisions of the Second Offender Act, the imposition of sentence rested with the judge, who assessed life imprisonment. Defendant appeals.

From the evidence the jury could have reasonably found the following facts. In the early morning hours of September 29, 1973, the murder victim, who was a white man, was cruising the locality of 29th and Prospect in Kansas City, Missouri, which was a black area. He was approached in his car by a male prostitute, but since the murder victim stated that he had only $6.00, no "date" was consummated.

Observing the presence of a white man in this black area, defendant invited one Greer to accompany him in robbing this man, but Greer declined. Later, defendant was seen to approach the victim's car, get in and drive off with the victim. Defendant had in his possession at that time a gun just given him by one Martin, who had stolen it shortly before.

Thereafter, defendant returned to the corner of 29th and Prospect and got into a car occupied by Greer and one Glover. Defendant proceeded to advise these witnesses that he had to kill the man and that he had put him in the trunk of his car. In the course of that conversation, defendant showed Greer and Glover $6.00 and a package of Salem cigarettes which he had gotten from the victim and also showed them the Martin gun which he stated he had used to shoot the victim. One of the bullets in the gun had been fired. Defendant also told witness Roberts that "he killed some-

body and robbed him and put him in the trunk."

Subsequent police investigation showed that a car parked in an alley a few blocks away was that of the deceased victim. The body of the deceased was found in the trunk of the car. The area around the car was muddy, and a number of soil samples were taken by police experts. Subsequent tests upon a soil sample taken from pants worn by defendant on September 29, 1973, showed that sample to match one of the soil samples taken from the area of the automobile. The State also introduced evidence that during the period of time closest to his death the deceased smoked Salem cigarettes, the brand displayed by defendant to Greer and Glover.

Defendant took the stand and flatly denied ever being present in the vicinity of 29th and Prospect during the period of time mentioned by the State's witnesses, much less having participated in any of the actions testified to by those witnesses. Defendant's other witnesses were his half-sister, who testified that he was asleep in her home all of the time in question, and Shelton, who was in the 29th and Prospect area all of the time in question and who said that he never saw defendant there during that period.

On this appeal, defendant raises the following points: 1) that the taking of a soil sample from his pants constituted an illegal search and seizure; 2) that in addition to submitting an instruction on the theory of felony murder, the court should have also instructed on conventional murder, which, in turn, would have called for instructions on second degree murder and manslaughter; and 3) that the prosecutor made improper and prejudicial reference in closing argument to defendant's prior conviction.

## I.

With respect to the search and seizure point, the facts are that defendant was arrested on a different charge not here involved on September 29, 1973. After the arrest he was booked and was given jail clothing. The clothes which he was wearing at the time of the arrest were then stored in the police property room for safekeeping. It was not until October 9 that police investigation began to focus on defendant in connection with the present murder and that defendant's pants were taken from the property room to be subjected to soil testing. Since this clothing was taken without defendant's consent and without a warrant, he argues that the search was unreasonable and unconstitutional.

*United States v. Edwards,* 415 U.S. 800, l.c. 806–807, 94 S.Ct. 1234, l.c. 1389, 39 L.Ed.2d 771 (1974) squarely answers this contention. The court in that case held:

"Indeed, it is difficult to perceive what is unreasonable about the police examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest.

\*     \*     \*     \*     \*     \*

". . . once the defendant is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing on the one hand and the taking of the property for use as evidence on the other. This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the 'property room' of the jail and at a later time searched and taken for use at the subsequent criminal trial."

The point is also covered by the even more recent case of *United States v. Jenkins,* 496 F.2d 57, l.c. 73 (2nd Cir. 1974). In that case the defendant's money and clothes

were taken and placed in safekeeping at the jail after his arrest. Later police officers checked numbers on the bills and found them to be "bait money." The bills were then seized without warrant. The court pointed out that for all practical purposes the serial numbers on the bills had been fully exposed to police view at the time of the arrest and that "it cannot be said that the 'second look' amounts to an intrusion into an area where the owner could any longer reasonably expect privacy."

Missouri decisions are in accord with these federal cases. Thus in *State v. Achter,* 512 S.W.2d 894, l.c. 905 (Mo.App.1974), the court held: "Once items have been exposed to police view under unobjectionable circumstances (inventory) then no reasonable expectation of privacy is breached by an officer taking a second look at such items." See also *State v. Williams,* 486 S.W.2d 468, 472 (Mo.1972).

## II.

■ If defendant were correct in his contention that an instruction on conventional murder should have been given in addition to that on felony murder, then it would follow that he was also entitled to instructions on second degree murder and on manslaughter as lesser included offenses. This is now required under the Caveats appended to MAI–CR 6.02 which became effective March 1, 1975. Although these new Caveats had not been promulgated at the time of the trial in this case, these Caveats should be considered as merely declaratory and explanatory of existing law; and even if that were not true, rules dealing with this general subject are entitled to retrospective application. *State v. Stapleton,* 518 S.W.2d 292, l.c. 301 (Mo. banc 1975).

■ However, an instruction on conventional murder was neither necessary nor proper in this case. The test to be applied for determining whether conventional murder should be submitted to the jury in addi-

tion to felony murder is set forth in *State v. Lindsey,* 333 Mo. 139, 62 S.W.2d 420, l.c. 424–425 (1933), which holds that conventional murder may properly be submitted if the facts and circumstances "apart from those of the other crime" tend to prove the necessary elements. Applying that test here, there is a complete lack of facts and circumstances sufficient to show the elements of murder without resort to the fact that the homicide occurred in the course of and as part of the commission of a robbery.

■ The evidence produced by the prosecution tended only to show a killing in the course of committing robbery and failed to show the elements of murder apart from the robbery. No more did the defendant's evidence tend to show any degree of homicide independent of a robbery. In fact, defendant and his witnesses stoutly denied that defendant had any part whatsoever in this killing or that he was even anywhere in the vicinity of the killing. The facts present a clean cut situation in which defendant was either guilty of felony murder or of nothing. Accordingly, under the ruling of the Lindsey case, the only proper instruction was that of felony murder.

## III.

The statement made by the prosecutor in closing argument to which defendant takes exception was as follows:

"Now, about Mr. Martin; Mr. Haggerty says, will you want to believe the class of person that Mr. Martin is and isn't it reasonable that if he will steal that he would rob? Do you recall that that is exactly the person this defendant is? He has been convicted of stealing—"

Defendant objected to that comment on the ground that there was no evidence of the defendant having been convicted of any prior crime. The trial court overruled the objection on the basis that the prior conviction had already been disclosed by defend-

ant's counsel in his opening statement to the jury.

Defendant admits that if his counsel had made a clear, unequivocal admission as to the prior conviction, then that admission would be binding and conclusive on the point. However, he seeks to escape this result by saying that the remark in question during the course of opening statement "was not intended to be evidence in and of itself, but rather was a formulation of what defense counsel *anticipated* the evidence would show."

■■ This distinction sought to be made by defendant has been recognized in *Bayer v. American Mutual Casualty Co.,* 359 S.W.2d 748 (Mo.1962). However, it has also been recognized that this distinction represents a thin line and determination of the question on which side of the line a given situation falls is not always clear. *Butcher v. Main,* 371 S.W.2d 203, 207 (Mo.1963); Divilbiss, "Practice and Procedure in Missouri," 30 Mo.Law Review 18, 22 (1965).

In view of the difficulty of deciding just how the remark made during the opening statement should be classified for the purpose of this distinction, it was highly important for the actual remark and the context to be included in the transcript on appeal. This has not been done. The duty falls upon the appellant to file the transcript in the appellate court and to insure the inclusion of all of the evidence and proceedings necessary for a determination of the questions presented by the appeal. *State v. Davis,* 515 S.W.2d 181, l.c. 183 (Mo.App. 1974). Defendant, the appellant here, has wholly failed to comply with that duty. Since this vital portion of the proceedings is not before us, error cannot be attributed to the trial judge in his ruling on the present point.

■■ Moreover, the portion of the prosecutor's argument now in question was invited by defendant and was retaliatory in character. Defense counsel had just argued that one of the prosecution witnesses should not be believed because of his having admittedly stolen a gun. Defense counsel had also outlined a theory that the principal witnesses for the State had conspired to place the blame upon defendant. In elaborating this theory of defense, defense counsel stated to the jury:

> " * * * they had an opportunity to concoct this story, contrive this case and place it upon the defendant. Who else is such a beautiful patsy for this case? Some guy *who had just got out of jail* . . . What a beautiful patsy. There he is." (Emphasis added).

In this argument, defense counsel was trying to take advantage of defendant's having gotten out of jail just previously to the murder in question, to evoke sympathy and to support his theory that this fact made defendant particularly susceptible to a frame-up by the alleged conspirators. He is in poor position to complain about the prosecution trying to turn the tables by using the same fact of the prior offense to attack defendant's credibility as a witness. Fair scope is permitted to the prosecution by way of retaliatory argument invited by a defendant, and the trial court is entitled to considerable discretion in determining how far such retaliation is to be permitted. *State v. Knighton,* 518 S.W.2d 674, 681 (Mo. App.1975); *State v. Wrose,* 463 S.W.2d 792, 796 (Mo.1971).

Affirmed.

All concur.