STATE of Missouri,
Plaintiff-Respondent,

v.

Harrison Lee MORRISON,
Defendant-Appellant.

No. 13140.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 11, 1983.

John D. Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Robert W. Evenson, John LePage, Pineville, for defendant-appellant.

PREWITT, Judge.

Appellant was convicted of stealing, § 570.030, RSMo 1978, and sentenced to one year in the county jail. Appellant was charged with appropriating 84,991 pounds of poultry owned by Hudson Foods, Inc. (Hudson).

Hudson had made an oral agreement with Cowboy Poultry Processing, Inc. (Cowboy) for it to process chickens for Hudson. Appellant was the president of Cowboy. Its plant was located in Monett. Hudson is headquartered in Rogers, Arkansas. The president of Hudson testified that after the processing the chickens were to be put in frozen storage in Monett. Instead of that occurring, at appellant's direction, most of the chickens were sold by Cowboy. Appellant personally retained part of the sales price.

An employee of Cowboy, Doug Landers, testified that after Cowboy had started processing the chickens for Hudson he telephoned one of Hudson's employees, Gavin Duffey, and made an agreement to buy them. He said he informed appellant of this agreement. Appellant testified that he was so informed. Duffey testified that he only agreed to sell a small portion of the chickens, "two pallets", or about 6000–7000 pounds of them. This was considerably less than what was sold to others.

Appellant contends in his first point that the evidence was insufficient to support the charge because he believed that Cowboy had the right to sell the chickens. Appellant asserts that this belief was conclusively shown because Landers told him that the chickens were purchased and because appellant told Barbara Henson, an office employee of Cowboy, that the chickens had been purchased from Hudson and she mailed an invoice to Hudson with copies of other documents which showed that Cowboy had sold the poultry. The record does not show when they were mailed.

■ In reviewing to determine if the evidence was sufficient to support the charge, we accept as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregard all evidence and inferences to the contrary. *State v. Manning,* 612 S.W.2d 823, 825 (Mo.App.1981). Viewed in this light the evidence was sufficient.

■ As appellant acknowledges, the jury did not have to believe Landers, a witness for appellant. Henson was a witness for the state and appellant contends that it was bound by her testimony that appellant told her that the chickens had been purchased from Hudson. However, his telling her that Cowboy had purchased the chickens does not establish that he in fact believed it. He apparently told her this after she had questioned if they had been purchased from Hudson. Hudson may not have received the documents showing that Cowboy had sold the chickens until after Cowboy was out of business and appellant had left the state.

There was evidence that Cowboy was having "cash flow" problems in meeting its payroll and paying other debts. The state's evidence was that appellant sold much more of the poultry than Hudson had agreed to sell. Appellant admittedly made the sales and kept a portion of the proceeds personally. They were sold to three purchasers. After receiving a check in Neosho from one of the purchasers, appellant cashed it and did not return to the Cowboy plant. He went to Oklahoma and the Cowboy plant shut down. The payroll due that week was not met and Hudson was not paid for the chickens.

Under the evidence the jury was entitled to believe that there was no agreement with Hudson for Cowboy to buy all of the poultry and that appellant knew this, but because he was desperate for money, he sold chickens knowing they belonged to Hudson. His conduct is consistent with his knowing that he should not have sold the poultry. The point is denied.

Appellant contends in his second and final point that the trial court erred in failing to grant a mistrial because of the portion of the prosecuting attorney's final closing argument where he commented on appellant's failure to subpoena Gavin Duffey.

The drastic nature of a mistrial requires that it be granted only in extraordinary circumstances where the prejudicial effect cannot be removed any other way, and such a determination lies largely within the discretion of the trial judge. *State v. Dees,* 639 S.W.2d 149, 159 (Mo.App.1982).

Gavin Duffey was the director of sales coordination for Hudson Foods and Doug Landers contended that he made the agreement to buy the poultry from Hudson during a telephone conversation with Duffey. Duffey did not testify in the state's initial presentation of evidence. After Landers had testified for appellant, the state was able to get Duffey, who was living in St. Louis, to appear at the trial as a rebuttal witness, although he was not subpoenaed. He had been endorsed on the information. Duffey said that only a small portion of the chickens were sold to Cowboy, much less than Cowboy sold to others. Near the start of the state's closing argument the prosecuting attorney said:

> "Now, let's go over the three defense witnesses. He said this was a civil debt, this isn't a criminal debt.
>
> First, Doug Landers. He said, 'I made an agreement with Gavin Duffey.' I submit to you, why did they not subpoena Gavin Duffey? The answer, because Gavin would clarify it.
>
> I'm going to be the first to admit here that after Mr. Evenson mentioned he was going to—"

Appellant's attorney then objected to the comments as to why appellant did not subpoena Duffey, contending that it inferred to the jury that appellant had the burden of proving his innocence instead of the state proving his guilt. The prosecutor then said, "I respond that he opened it up as to why he was not here, when he was here at the preliminary hearing." The state contends that the prosecuting attorney's argument was proper retaliation to comments made in appellant's counsel's closing argument. Appellant's counsel's argument is not in the record, and the state contends that because it is not, the appellant failed to preserve this contention as he did not submit a rec-

ord sufficient for us to determine whether the prosecutor's argument was proper retaliation. The state also contends that the argument was proper because it was regarding a witness who did testify and was not prejudicial.

A prosecutor can go further by way of retaliation than in the first instance, and the trial court has considerable discretion in permitting the use of retaliatory arguments. *State v. Bellew,* 586 S.W.2d 461, 463 (Mo.App.1979). See also *Lewis v. Bucyrus-Erie, Inc.,* 622 S.W.2d 920, 926–927 (Mo. banc 1981).

Whether the prosecutor's argument could have been justified as retaliation we cannot determine as appellant's counsel's closing argument is not in the record before us. Appellant had the duty to file a record that included all of the evidence and proceedings necessary for a determination of the questions presented by appeal. *State v. Gordon,* 527 S.W.2d 6, 10 (Mo.App.1975); Rule 30.04(f), Mo.Rules of Court (14th ed. 1983). It must contain "all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent". Rule 30.04(a).

In *Gordon* one of the defendant's points on appeal dealt with the prosecutor stating in his closing argument that defendant had previously been convicted of stealing. Defendant objected that there was no evidence of the conviction. The trial court overruled the objection because the conviction had been disclosed by defendant's counsel in his opening statement. That opening statement was not part of the record on appeal. The court held that the defendant had not fulfilled his duty of furnishing a sufficient transcript to decide this point and denied defendant's contention. The same result is called for here. Moreover, even if the prosecutor's argument was improper, it was not prejudicial. There is no contention that the jury was not fully instructed on the burden of proof and the jurors likely knew before the trial and would certainly have learned during the trial that a party

does not subpoena and call a witness knowing that the witness's testimony is damaging to the party's case or defense. This point is denied.

The judgment is affirmed.

MAUS, P.J., disqualified.

HOGAN and CROW, JJ., concur.