STATE of Missouri, Plaintiff-Respondent,

v.

Jimmy Dean NELSON, Defendant-Appellant.

No. 13442.

Missouri Court of Appeals, Southern District, Division Two.

July 5, 1984.

John D. Ashcroft, Atty. Gen., Mark S. Siedlik, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Frederick W. Martin III, West Plains, for defendant-appellant.

PREWITT, Chief Judge.

Defendant was convicted of burglary and sentenced to five years' imprisonment. He states in his point on appeal:

"The trial court erred in overruling appellant's motion for new trial due to the insufficiency of the evidence because the motion for new trial should have been sustained in that the evidence presented (to-wit, that appellant unlawfully entered Sharon Hall's trailer, attempted to open her bedroom door, and, after being shot by Sharon Hall, forcibly opened her bedroom door and grabbed her on the shoulders and wrists) was insufficient to establish beyond a reasonable doubt that appellant entered Sharon Hall's trailer for the purpose of committing the crime of assault therein."

■ In reviewing to determine if the evidence was sufficient to support the charge, we accept as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregard all evidence and inferences to the contrary. *State v. Morrison*, 659 S.W.2d 346, 347 (Mo.App.1983). By that standard the point almost states the reasons to deny it.

■ Defendant was charged with burglary for breaking into Miss Hall's mobile home for the purpose of committing third degree assault as described in § 565.070.-1(5), RSMo 1978. It provides that a person commits assault if he "knowingly causes physical contact with another person knowing the other person will regard the contact as offensive or provocative." Defendant unquestionably assaulted Miss Hall, but contends that this does not show that he had that purpose at the time he broke into her mobile home.

The evidence showed that Miss Hall is a grade school teacher who lived alone in a mobile home located in a mobile home park. She had seen defendant when he had been in high school five years earlier. On September 20, 1982, she woke at 5:30 a.m. to let her dog outside. When she opened the door she heard a noise outside and quickly closed it and locked both its locks. Then she heard a sound like "prying on the door." She went into her bedroom and locked its door and used a telephone to call her landlord and a neighbor. While doing so she heard glass in the outside door breaking. When she finished with the phone calls, she picked up a revolver she had recently purchased following a problem with a "prowler". Then she heard someone enter the trailer through the door.

An attempt was made from outside the bedroom to open its door by turning the doorknob. When that was unsuccessful "pressure" was put against the door. Miss Hall twice yelled that she had a gun and would shoot but attempts continued to force the bedroom door open. She then shot to the left of the door as a warning, and when the attempts to force the door did not stop, she shot through the door several times. Three of them hit the intruder. His perseverance is illustrated by the following from the record:

"Q. [JoAnne Spears Jackson, prosecuting attorney] After you fired these shots through the door, did that stop the person from coming through or did he continue?

A. [Sharon Hall] No. He forced the door open and lunged through the door, came right on in and then he grabbed me by the shoulders and by the wrist of the hand I was holding the gun in, and pushed me forceably backwards into the room."

She was pinned against the wall and a closet but got her arm loose from his grasp and shot him one more time. He fell to the floor and she was able to step over him and go outside. Defendant was found lying down just outside the mobile home and was

taken by ambulance to a hospital. He was subsequently arrested and charged.

The sheriff testified that there were marks on the outside door that appeared to have been made by a screwdriver. When he arrived a screwdriver was lying across the threshold of the door. The screwdriver did not belong to Miss Hall and she had not seen it before. There were glass panes on the door which had been broken. The sheriff said that the facing of the bedroom door "had been ripped off as if the door had been shoved against real hard". There were three bullet holes in the door and bloodstains on the floor of the bedroom.

Defendant testified. He said that evening he had been to "Hog and Flo's", a tavern south of West Plains, since five or six o'clock, where he had danced and played pool. He said he drank about a case of beer and "a little whiskey with some friends a couple of times." When he left the tavern at one o'clock he bought a case of beer to take with him and started "driving around and drinking." His testimony indicated he was alone.

While doing this he ran off the road and into a ditch close to the mobile home park. It took him about 30 seconds to a minute rocking the car back and forth to get it out of the ditch. When he got it out he saw that he had a flat tire and he attempted to change it. He was "pretty drunk" but was able to do part of it. He took the flat tire off the car, put the car upon blocks and put the flat tire in the trunk. He got the spare tire out of the trunk and to the side of the car. He then put the jack and lug wrench back in the trunk.

He testified he saw a light on in Miss Hall's trailer and went toward it. He stated that his purpose was "to use the phone or to have someone else to use it to call a wrecker or something". He said he did not know who lived there. Just as he was getting near the trailer the door opened and when he started toward the door it closed. He said he knocked on the door and when there was no reply, he "started beating on it real hard. Then I jerked it open" and went inside. He didn't "remember too much after that." The next thing he recalled was lying on the lawn in front of the trailer with people standing around. He denied he had any intent to assault anyone inside the trailer.

Defendant contends that under the holding in *State v. Brown*, 217 S.W.2d 546 (Mo.1949), there was insufficient evidence to show that he intended to commit the assault. We do not find that case applicable. There defendant was charged with burglary by intending to kidnap and to rape. No kidnapping or rape occurred and the court held that there was no evidence of intent to do so. Here the assault charged was committed and the evidence indicates that must have been one of the purposes of defendant's entry.

It is difficult to believe defendant's version of his reason for wanting to enter the mobile home. It is obvious that defendant wanted to reach the person inside for some reason. He went immediately to the door of the room she was in. If the use of the phone was his only purpose, upon entering he would not have gone to the effort of knocking down a portion of the bedroom door while being shot at, knowing that the person inside the bedroom had a gun. The evidence indicates there was another phone in the mobile home which was not in the bedroom. Defendant did not seek to use that phone and there is no indication that he knew there was a phone in the bedroom. His work on changing the tire indicates he should have been able to use a phone without assistance.

If defendant did not have the purpose to assault her before he entered, it is unlikely that he formed such an intent inside in view of her strong resistance. He may have intended to commit a different crime had she not so resisted, but such an assault was at least a preliminary to it.

The evidence was sufficient for the jury to find that defendant entered with a purpose to commit the assault as charged.

The judgment is affirmed.

HOGAN, P.J., and MAUS and CROW, JJ., concur.