**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Phillip Murdock OLDHAM,
Defendant–Appellant.**

**No. 52745.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 8, 1987.

Motion for Rehearing and/or Transfer
Denied Jan. 7, 1988.

Application to Transfer Denied
Feb. 17, 1988.

Sarah S. Pleban, Asst. Public Defender, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KELLY, Judge.

Phillip Oldham appeals from a jury conviction of first degree robbery, § 569.020 RSMo 1986, and armed criminal action, § 571.015 RSMo 1986. The trial court, having found him to be a persistent offender, § 558.016 RSMo 1986, sentenced him to consecutive terms of life imprisonment and ten years, respectively. We affirm.

The sufficiency of the evidence is not challenged. Viewed in the light most favorable to the state, the record reveals the following facts.

Victim Charles Eisen was supervising the renovation of the building in preparation for opening a business known as "Woofies Hot Dogs." On June 16, 1986, Eisen, part owner of Woofies, arrived at his restaurant at approximately 7:45 a.m. Shortly thereafter, Eisen and his manager, Kathy Lucy, left the restaurant to pick up some furniture, and both arrived back at Woofies at approximately 9:00 a.m. After they unloaded the furniture, Lucy left.

Later that morning, Victor Moore went to Woofies to ask Eisen if he needed Moore to help paint the building. Victor and his brother had helped Eisen paint the preceeding Saturday. Eisen did not need any more help painting, so Moore left the restaurant.

Twenty to thirty minutes later, appellant entered the restaurant requesting an application for employment. Eisen and appellant talked for a few minutes. Appellant said he would complete the application and bring it back. Appellant then left Woofies.

A few minutes later, appellant returned to the restaurant. Eisen told appellant that his manager did the hiring and she would contact him. Appellant then displayed a knife, demanded money, and told Eisen to lie on the floor. Eisen then removed from his pockets his wallet, his keys, and approximately $200.00 cash. Appellant told Eisen to go into the restroom, and appellant then pushed a desk against the restroom door and told Eisen not to try and escape because he had someone else waiting for him. Eisen's finger was bleeding and he had also been stabbed in the stomach.

After appellant left, Eisen escaped from the bathroom. Approximately two to three minutes elapsed from the time appellant came into the restaurant until Eisen escaped from the bathroom. Eisen immediately called the police. He was hospitalized overnight.

Detective William Carson was assigned to investigate Eisen's case. After learning that Victor Moore had been at Woofies the morning of the robbery, Detective Carson went to the Magdela House, a halfway house in St. Louis. Detective Carson checked the sign-out sheet. Carson learned that on June 16, 1986, appellant checked out of the Magdela House at 6:05 a.m.

On June 19, 1986, police arrested Moore and appellant, and both were conveyed to the Maryland Heights Police Department. At the station, appellant read and signed

his Miranda warning and waiver form. At first appellant denied any involvement in the robbery. Later, however, after appellant was confronted with Victor Moore, appellant began to confess. In a taped statement, appellant admitted that he robbed Eisen.

At trial, appellant testified on his own behalf. He denied committing the crimes, but admitted making the taped statement that was introduced into evidence by the state.

Appellant first contends that the trial court erred by failing to grant a continuance during trial when the state introduced previously undisclosed records into evidence.

Marvin Litke, resident manager of the Magdela House, testified concerning the records of appellant and Victor Moore. Mr. Litke testified that when residents leave the Magdela House for the day, they are required to bring back a sheet listing all their job contacts for the day. Appellant brought back a job contact list for June 16, 1986, the day of the robbery. The prosecutor had Mr. Litke produce this listing of job contacts at trial. Prior to trial, neither the state nor the defense was aware of the existence of the record. Appellant claims the trial court erred in failing to grant a continuance based on this newly discovered exculpatory evidence which provided a potential alibi.

Supreme Court Rule 25.03(A)(1) requires the state to provide the names and last known addresses of persons whom the state intends to call as witnesses at any hearing or at the trial, together with their written or recorded statements, and existing memoranda, reporting or summarizing part or all of their oral statements, if the statements are within the state's "possession or control." The state could only have "possession and control" of the job contact list if it had knowledge of its existence. *See State v. Sellers,* 710 S.W.2d 398, 400[1] (Mo.App.1986); *State v. Rapheld,* 587 S.W. 2d 881, 888[9] (Mo.App.1979); *State v. Chambers,* 550 S.W.2d 846, 850[8] (Mo. App.1977). The record in the instant case shows that the prosecution was unaware of the existence of the job contact list until the witness testified. Therefore, because the report was not in the possession or control of the state, no duty to disclose could arise.

The situation here is similar to that in *State v. Lorenz,* 620 S.W.2d 407 (Mo.App. 1981). In *Lorenz,* a police report made available to the defense contained only one of the two statements made by the defendant. The court nonetheless found no discovery violation since both the state and the defense became aware of the nondisclosed statement at the same time when referred to by a witness policeman at a hearing on a pretrial motion to suppress the disclosed statement. Analogous to *Lorenz,* the appellant here cannot point to any failure to comply with a discovery request because both the prosecutor and defense were unaware of the job contact list until the witness testified.

Appellant claims he was denied an opportunity to develop an alibi because the state failed to disclose the job contact list. We note that had appellant told his attorney that he had been applying for jobs on the day of the robbery, his attorney presumably would have inquired about a job contact list.

Although Marvin Litke is not endorsed as a witness on the original indictment, appellant raises no question that the state did not properly endorse the witness. Defense counsel had an adequate opportunity to interview Mr. Litke and to discover the job contact list and to conduct an appropriate investigation prior to trial. We find that the trial court did not err by failing to grant a continuance based on the previously undisclosed records.

Appellant also claims error because the trial court allowed Detective Carson to testify in rebuttal concerning the authenticity of appellant's job contacts for the day of the crime. Detective Carson testified in rebuttal that during the course of the trial he contacted the various businesses listed by appellant on the job contact sheet.

The scope of rebuttal testimony rests within the broad discretion of the trial

court, and the appellate court will not interfere in the absence of an abuse of discretion. *State v. Hyatt*, 716 S.W.2d 423, 425[2] (Mo.App.1986). Any competent testimony that tends to explain, counteract, repel or disprove evidence offered by the defendant may be offered in rebuttal of defendant's testimony. *Id.* at 425. *See also State v. Martin*, 651 S.W.2d 645, 653[10] (Mo.App.1983); *State v. Cameron*, 604 S.W.2d 653, 658[9] (Mo.App.1980); *State v. Harris*, 539 S.W.2d 793, 794–795 (Mo.App.1976).

■ In the case at bar, the job contact sheet was received into evidence in appellant's case-in-chief. Appellant testified that on June 16, 1986, he had in fact visited those businesses listed on the report. Therefore, Detective Carson's testimony in rebuttal was proper because it tended to explain, counteract, repel or disprove evidence offered by the defendant.

Appellant also asserts that Detective Carson's testimony constituted hearsay. We disagree. Detective Carson was not allowed to testify as to what he heard from the various job contacts listed on appellant's sheet. Rather, his testimony consisted of his investigation which determined whether the telephone numbers on the job contact sheet correlated to a residence or a business.

We find no abuse of the court's discretion in controlling the scope of rebuttal testimony. Accordingly, appellant's first point is denied.

Appellant's second and fourth points concern errors purportedly made by the prosecutor in the state's final closing argument. Appellant first contends that the trial court erred in failing to grant a mistrial when the prosecutor said in closing argument, "[w]ith regard to the alteration, I wanted to bring that out ..." Defense counsel objected, and the trial court immediately sustained defense counsel's objection and then instructed the jury to disregard the remark.

Appellant's fourth point is based on the following statement made by the prosecutor, John Chancellor, during closing argument:

You've heard the rights of the defendant, but the Charles Eisens of the world, the Pat Purcells, and the John Chancellors and everybody in the community have also some rights.

Appellant claims the prosecutor improperly personalized the case to the jury.

We address each of appellant's contentions in turn.

■ We initially note that appellant did not provide this court with defendant's closing argument from the transcript. Respondent contends that the final rebuttal argument of the prosecutor were invited by defense counsel's closing argument. Without being able to examine defendant's closing argument, we cannot say that the prosecutor's reference to the Magdela records were not invited by appellant or were not retaliatory in character.

In *State v. Morrison*, 659 S.W.2d 346, 348[5] (Mo.App.1983), the appellant argued that the prosecutor made an improper reference to the appellant's failure to subpoena a witness, thereby inferring to the jury that the defendant had the burden of proving his innocence. The state contended that the prosecuting attorney's argument was proper retaliation to comments made in appellant's counsel's closing argument. Analogous to the case at bar, the appellant omitted defense counsel's closing argument from the transcript. The court in *Morrison* said:

Whether the prosecutor's argument could have been justified as retaliation we cannot determine as appellant's counsel's closing argument is not in the record before us. Appellant had the duty to file a record that included all of the evidence and proceedings necessary for a determination of the questions presented by appeal. *State v. Gordon*, 527 S.W.2d 6, 10[5] (Mo.App.1975); Rule 30.04(f), Mo.Rules of Court (14th ed. 1983). It must contain "all of the record, proceedings and evidence necessary to the determination of all questions to be presented by either appellant or respondent." Rule 30.04(a).

*Id.* at 348[5].

In *Morrison,* the court held that the defendant had not fulfilled his duty of furnishing a sufficient transcript to decide this point and denied defendant's contention. We reach the same result here.

We note that a trial court has broad discretion in the control of closing argument, with wide latitude accorded counsel in their summations and a conviction will be reversed for improper argument only where it is established that the complained of argument had a decisive effect on the jury's determination. *State v. Newlon,* 627 S.W.2d 606, 616[12, 13] (Mo. banc 1982), *cert. denied* 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149, rehearing denied, 459 U.S. 1024, 103 S.Ct. 391, 74 L.Ed.2d 520; *State v. Sanders,* 714 S.W.2d 578, 590[17] (Mo. App.1986).

■ In the instant case, even if the reference to the Magdela records were improper, it was not prejudicial. The record reveals that appellant's counsel had referred to the alteration of the Magdela House sign-out sheets during the trial. Moreover, the trial court immediately sustained defense counsel's objection and then instructed the jury to disregard the remark. We find no abuse of discretion by the trial court herein in refusing to grant the drastic remedy of a mistrial. Accordingly, appellant's second point is denied.

■ Appellant's fourth contention that the prosecutor's statements in closing argument that "everybody in the community" also have rights unfairly personalized the case to the jury is likewise without merit. This argument was a legitimate call for law enforcement and emphasized the duty of the jury as to its responsibility for the suppression of crime. *See State v. Steward,* 564 S.W.2d 95, 99[5] (Mo.App. 1978). The prosecutor is accorded latitude in these areas and is further permitted to urge the jury to consider what conditions will result in society upon failure to uphold the law. *State v. Olds,* 603 S.W.2d 501, 511[14] (Mo. banc 1980). Here, the prosecutor merely reminded the jury that in addition to the defendant's rights, the community has rights too. Upon examining the prosecutor's comments in the context

of his argument, we cannot say that he exceeded the bounds of permissible argument. Appellant's fourth point is denied.

■ Appellant's final contention is that the trial court committed error in failing to grant a mistrial when the prosecutor stated during his opening argument that Victor Moore, a codefendant, was also charged with crimes and would be tried separately.

The drastic remedy of a mistrial requires that it be granted only in extraordinary circumstances where the prejudicial effect cannot be removed in any other way; granting a mistrial rests largely within the discretion of the trial judge. *State v. Grant,* 697 S.W.2d 311, 312[6] (Mo.App. 1985).

Here, in his opening argument, the prosecutor made the following statement:

Victor Moore, by the way, is charged and will be tried, which is a separate file.

Appellant objected and requested a mistrial. The court overruled appellant's objection. Shortly thereafter, the prosecutor further told the jury:

All I'm saying is that Victor Moore is charged on a separate file. That has nothing to do with you. We're trying at this time this defendant, but you will hear Victor Moore's name mentioned with this trial we're trying for his part in this. We're trying the defendant, Phillip Murdock Oldham. That's all you are concerned with, but you will hear the name Victor Moore.

The prosecutor stated in his opening argument that a codefendant *had been charged and will be tried separately.* Appellant's contention that he was prejudiced because of the prosecutor's statements concerning the status of the codefendant's case must fail, because the statements do not suggest that the case against the codefendant had been resolved. In *State v. Bibbs,* 634 S.W. 2d 499 (Mo.App.1982), the prosecutor stated in his opening argument that both the defendant and defendant's co-conspirator were placed under arrest. The court stated:

While the statements of the prosecutor concerning Howard McNutt do suggest

the possibility of concerted action between the defendant and McNutt, these same references fail to suggest that the case against defendant's "co-conspirator" had been resolved. In fact, no reference was ever made concerning any disposition of McNutt other than his arrest. It is improper to tell the jury that a jointly accused defendant has been convicted, pleaded guilty or has been acquitted. *State v. Aubuchon,* 381 S.W.2d 807, 815–816 (Mo.1964). The point is denied.

Relying on *Bibbs,* we conclude that no prejudicial error resulted from the trial court's refusal to grant a mistrial upon the prosecutor's comments in opening argument.

The judgment of the trial court is affirmed.

KAROHL, P.J., and SMITH, J., concur.