STATE of Missouri, Plaintiff/Respondent,

v.

Lawanda JACKSON, Defendant/Appellant.

No. 67409.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 20, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 25, 1996.

N. Scott Rosenblum, Ramona L. Marten, Wittner, Poger, Rosenblum & Spewak, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stephen D. Hawke, Asst. Atty. Gen., Jefferson City, for respondent.

GRIMM, Judge.

In this jury-tried case, defendant was convicted of first degree murder and armed criminal action, §§ 565.020 and 571.015.* The trial court sentenced her to life imprisonment without eligibility for probation or parole and three years consecutively. She appeals; we affirm.

Defendant raises four points. She alleges the trial court erred in (1) giving the jury instructions based on MAI–CR 3d 300.20 and 306.04; (2) overruling her objection to the rebuttal testimony offered by the State's psychiatrist; (3) sustaining the State's objection to the testimony of several witnesses regarding victim's prior fights with defendant and others; and (4) sustaining the State's motion to strike two African–American jurors for cause.

### I. Background

Defendant and victim attended the same high school. On the morning of March 25, 1993, defendant brought a gun to school and killed victim by shooting him in the back of the head.

At trial, defendant did not dispute this. Rather, her defense focused on her mental state at the time of the shooting. She contended she was incapable of deliberation and the ability to act knowingly.

Defendant's expert was Dr. Richard Wetzel, a clinical psychologist. He interviewed and tested defendant. He also interviewed her family and friends, school officials, and victim's friends. Further, he reviewed all the evidence obtained by police.

Through his investigation, Dr. Wetzel learned defendant and victim had a relationship before the shooting. He also learned they broke up about a month before the shooting after a "major fight" where "there were many blows struck." Several people

* All statutory references are to RSMo 1994.

told Dr. Wetzel of abusive incidents involving victim and defendant. In addition, he heard about victim's girlfriend threatening defendant.

Dr. Wetzel said that on the day of the shooting, defendant "believed that [victim and his girlfriend] were stalking her and going to hurt her." He opined that defendant was "fearful, panicked, psychotic, delusional" before she shot victim. He said defendant "had a brief psychotic disorder of a paranoid type" at the time of the shooting.

In rebuttal, the State called Dr. Sam Parwatikar, a psychiatrist. Unlike Dr. Wetzel, he examined defendant pursuant to a court order. Dr. Parwatikar expressed the opinion that defendant did not suffer from paranoid personality disorder. Further, he said he did not believe she had a brief reactive psychosis of a paranoid type. Rather, he believed that she had an adjustment disorder, which is not a mental disease in Missouri.

### II. Jury Instructions

In defendant's first point, she alleges the trial court erred in giving the jury instructions based on MAI–CR 3d 300.20 and 306.04. She contends that these instructions are only to be given when a defendant pleads not guilty by reason of mental disease or defect. Because she did not so plead, but rather pled only not guilty, she argues these instructions should not have been given.

Before defendant's witness Dr. Wetzel testified, the State asked the trial court to read an instruction to the jury based on MAI–CR 3d 300.20. Defendant objected, pointing out that the Notes on Use to the instruction say it is to be used when statements obtained during a § 552.030 examination are admitted into evidence. Dr. Wetzel had not performed such an examination and defendant argued the instruction was improper.

In addition, defendant brought the case of *State v. Strubberg,* 616 S.W.2d 809 (Mo. banc 1981) to the court's attention. The trial court overruled the objection and gave this instruction:

The next witness to testify is Dr. Richard Wetzel. He will testify concerning the mental condition of the defendant at the time of the alleged offense. In the course of his testimony, Dr. Richard Wetzel may testify to statements and information that were received by him during or in connection with his inquiry into the mental condition of the defendant.

In that connection, the Court instructs you that under no circumstances should you consider that testimony as evidence that the defendant did or did not commit the acts charged against her.

The trial court read essentially the same instruction before Dr. Parwatikar testified. Defendant did not object to this instruction.

Before the trial court submitted the case to the jury, it also read an instruction based on MAI–CR 3d 306.04. It stated:

You will recall that certain doctors testified to statements that they said were made to them and information that they said has been received by them during or in connection with their inquiry into the mental condition of the defendant.

In that connection, the Court instructs you that under no circumstances should you consider that testimony as evidence that the defendant did or did not commit the acts charged against her.

Defendant did not furnish us with a copy of Dr. Wetzel's report. However, the legal file contains a November 15, 1993 court order. In part, that order says the court conducted "a review of defense counsel's psychiatric report finding the defendant to be suffering from a mental disease or defect at the time of this crime."

On the State's motion, the trial court then ordered the Director of the State Mental Hospital to appoint a psychiatrist to examine defendant "for the existence of a mental disease or defect including the existence of diminished capacity." Dr. Parwatikar conducted that examination.

Section 552.030 concerns mental examinations pursuant to a plea of not guilty by reason of mental disease or defect excluding responsibility. Section 552.030.5 directs the trial court to give an oral instruction at the time it admits statements or information against an accused on the accused's mental condition. This section also requires a jury instruction. MAI–CR 3d 300.20 and 306.04 are designed to comply with this legislative mandate.

Defendant argues that because Dr. Wetzel's examination was not made pursuant to § 552.030, giving these two instructions violated the Notes on Use. She relies solely on *Strubberg* and the Notes on Use to support her argument.

In *Strubberg*, the defendant relied on the diminished capacity doctrine. He was examined for his fitness to stand trial pursuant to § 552.020, but was not examined pursuant to § 552.030. He did not offer, and the trial court did not give, any instructions similar to the predecessors to MAI–CR 3d 300.20 and 306.04.

On appeal, the defendant argued he was entitled to these instructions because he used evidence obtained in a § 552.020 examination in his attempt to prove diminished capacity. The supreme court disagreed. It said, "the oral and written limiting instructions mandated by § 552.030.6 are directed at statements and information obtained in the course of any court ordered [§ 552.030] type examination after entry of a plea of not guilty by reason of mental disease or defect excluding responsibility." *Strubberg*, 616 S.W.2d at 816–17. It held that the trial court did not err in failing to give an instruction similar to MAI–CR 3d 306.04. *Id.* at 817.

Here, defendant attempts to use the not-error-to-not-give holding in *Strubberg* to assert it is error-to-give. However, her argument does not indicate why that conclusion follows. Nor does she show how she was prejudiced by the giving of these instructions.

Defendant also alleges the instructions were given in violation of the applicable Notes on Use. We have carefully read the Notes on Use to these two instructions. None of the Notes on Use specifically limit the use of these two instructions to only § 552.030 examinations. Nor do any of them address the question defendant raises.

In contrast, Notes on Use to numerous other instructions place limits on their use. *See, e.g.* Notes on Use 2 to MAI–CR 3d 310.08 ("This instruction should be given only...."); Notes on Use 2 to MAI–CR 3d 310.14 ("This instruction should be given only...."); Notes on Use 2 to MAI–CR 3d 310.24 ("This instruction should not be given in relation to any count submitting murder.").

In the absence of similar limiting language here, we cannot conclude that giving the two instructions violated the applicable Notes on Use. Point denied.

## III. Rebuttal Testimony

In defendant's second point, she alleges the trial court erred in overruling her objection to Dr. Parwatikar's rebuttal testimony. She argues that Dr. Parwatikar's testimony was irrelevant and misleading because "he did not provide an opinion with respect to diminished capacity and testified he was not requested to do so."

We first note that at trial, the State asked Dr. Parwatikar if he had "an opinion whether or not [defendant] suffered from any type of diminished capacity?" Defense counsel objected on the basis that it calls "for the ultimate issue." The trial court sustained the objection. Thus, it is ironic that in this point, defendant asserts the trial court erred because Dr. Parwatikar did not provide an opinion concerning diminished capacity.

■ Be that as it may, appellate courts recognize that any competent testimony that tends to explain, counteract, repel, or disprove evidence offered by the defendant may be offered in rebuttal. *State v. Oldham,* 743 S.W.2d 547, 550 (Mo.App.E.D.1987). The scope of rebuttal testimony rests within the broad discretion of the trial court, and the appellate court will not interfere in the absence of an abuse of discretion. *Id.* at 549–50.

■ Even if Dr. Parwatikar did not consider diminished capacity while examining defendant, his testimony refutes Dr. Wetzel's testimony and is relevant. We find no abuse of discretion. Point denied.

## IV. Evidence of Prior Fights

In defendant's third point, she alleges the trial court erred in sustaining the State's objections to the testimony of several witnesses regarding victim's prior fights with defendant and others. She argues that this testimony was relevant to her defense of diminished capacity and to rebut the State's argument that defendant stalked the victim.

■ The trial court has broad discretion to determine the relevance of evidence offered. *State v. O'Dell,* 787 S.W.2d 838, 841–42 (Mo. App.E.D.1990). We have carefully reviewed the record and find no abuse of discretion. Point denied.

## V. Challenges for Cause

In defendant's fourth and final point, she alleges the trial court erred in sustaining the State's motion to strike two African–American jurors for cause. We disagree.

■ During voir dire, the State commented that the punishment for first degree murder is life without probation or parole. The State then asked if the jurors could consider that punishment if it met its burden of proof. Several jurors, including the two in question, indicated they could not.

The next day, while defense counsel was conducting voir dire, he told the jury panel about the possibility of lesser included offenses. The two jurors then changed their minds and said they could consider life without parole.

At the close of defense counsel's voir dire, the trial court allowed counsel to ask further questions of the two jurors at the bench. One juror said that she changed her mind because she had "seen more options."

The trial judge asked the other juror if her change was "because of the other choices that you were given?" She responded, "Right. Right, today when [defense counsel] said it." However, each juror ultimately said she could consider life without parole.

The trial court granted the challenges for cause. The court said:

I will tell you what my problem is with it, and it's this. Is that your explanation to the jury, you know, to the jury about the

lesser included offenses doesn't change the question one bit. It just—it just gives them more choices. And when they found out that they could give this lady less than fifty years without parole, then they were ready to do the whole ball of wax. That's what I get out of it. That's what I got out of those two jurors. That is why I am striking them.

The trial court has broad discretion to determine the qualifications of prospective jurors. *State v. Feltrop,* 803 S.W.2d 1, 7 (Mo. banc 1991) *cert. denied,* 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). The court did not abuse its discretion in sustaining the State's motion to strike these jurors. Point denied.

The trial court's judgment is affirmed.

AHRENS, P.J., and PUDLOWSKI, J., concur.